|119  115|
{177  363|

# APPEAL OF CHARLES MEURER.
# APPEAL OF EDWARD F. I. MEURER.
# CHARLES F. MEURER v. EDWARD F. I. MEURER.

APPEALS FROM THE DECREES OF THE COURT OF COMMON PLEAS NO. 3 OF PHILADELPHIA COUNTY.

Argued January 6, and 25, 1888—Decided March 5, 1888.

1. A court in Pennsylvania has no power, at the instance of a third person, to institute a summary inquiry and to adjudge a party to a pending suit to be incompetent by reason of mental weakness to have the care and control of his property and estate and unable to protect his rights and interests involved in the proceeding.

2. Since the act of June 13, 1836, P. L. 592, relating to lunatics and habitual drunkards and prescribing a special mode of proceeding to determine the fact of insanity or habitual drunkenness, as the case may be, such inquiries must be conducted in the mode prescribed by that act and its supplements, and not otherwise.

3. In a proceeding by bill in equity, the plaintiff charged that he was the legitimated son and sole heir at law of a decedent; that the defendant was an illegitimate son of the plaintiff's mother but not of the plaintiff's father and both had been brought up in the same family; that, by fraudulent advantage taken of the plaintiff's ignorance and mental weakness and by fraudulent misrepresentations, the defendant had obtained from the plaintiff his title to the real estate of his deceased father:

*Held,* that, these and other facts being satisfactorily established by the evidence, it was not error to decree the cancellation of the conveyances; that the defendant should forthwith deliver up possession of the real estate to the plaintiff, and that an account should be taken of the rents, issues and profits.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ., TRUNKEY, J., absent.

Nos. 396 January Term 1887 and 89 January Term 1888, Sup Ct.; No. 605 December Term 1883, C. P. No. 3.

On January 11, 1884, Charles Meurer filed a bill in equity against Edward F. I. Meurer, in which it was in substance averred:

That the plaintiff was born on or about May 30, 1843, and was the son of Marie Henrietta Schmidt and Charles F. Meurer, who were married at the Hotel de Ville de Strasbourg on

August 27, 1844; and that the defendant was a son of said Marie H. Schmidt, but not of the said Charles F. Meurer, and was born on or about July 31, 1839; that the said Charles F. Meurer, after his marriage, maintained and educated the defendant and treated him as one of his own family, and the plaintiff was brought up with the defendant and constantly regarded and believed him to be his elder brother, confiding in him as such; that the plaintiff was of weak mind, illiterate, unable to read and write anything except his name.

That said Charles F. Meurer after his marriage removed with his family to Philadelphia, where he died intestate on March 20, 1875, seized of the premises at No. 1025 Walnut street, which were subject to a yearly ground-rent of $36, reserved by deed, and a certain mortgage debt of $2,000; that on March 22, 1875, letters of administration upon the estate of the deceased were issued to the defendant, who in about a fortnight thereafter moved into said premises with his family; and that, though the defendant had filed his account as administrator, confirmed October 27, 1876, charging himself therein with the rents of said premises from the death of the deceased to May 1, 1876, the plaintiff, of the personal estate of said decedent, had received no portion whatever.

That on August 12, 1876, the defendant procured the signature of the plaintiff to a joint deed conveying said premises to one Gustav Vogt, the defendant's brother-in-law, for an alleged consideration of $2,000 and subject to the said incumbrances, which deed recited inter alia the death of said Charles F. Meurer, intestate, leaving to survive him as sole heirs at law the plaintiff and defendant, to and in whom the said premises descended and vested; that on August 14, 1876, a deed was executed by said Gustav Vogt conveying the said premises to the defendant for a like consideration of $2,000 and subject to said incumbrances; and that said conveyances to and from said Gustav Vogt were wholly without consideration.

That, when his said conveyance was executed, the plaintiff was without counsel and had no person to represent him in the transaction; but the defendant was well aware of the confidence reposed in him by the plaintiff, and, fraudulently representing himself as a co-heir with the plaintiff, although on

attaining his majority he had been informed that he was not a son of said Charles F. Meurer, and fraudulently representing, also, that the premises were worth but $6,000 though as the plaintiff was informed and believed they were worth more than $12,000, and taking advantage of the plaintiff's incapacity, persuaded, induced and influenced him to execute said conveyance, without any consideration therefor except a mortgage upon the premises executed by the defendant to the plaintiff for the sum of $1,000, which mortgage, though recorded, had never been in the plaintiff's possession, nor had he ever received any interest in money upon it.

That for three years after his father's death, the plaintiff had made his home with the defendant, during which time he had assisted him in his business of laying carpets, part of the time merely occupying a room in said premises, obtaining his meals elsewhere ; that, in September or October, 1881, the defendant alleging to the plaintiff that his board for the time he resided with him amounted to within $2 of the sum he was to receive on his mortgage, the plaintiff, relying upon the statements of the defendant, was induced by him to sign a receipt in satisfaction of said mortgage, in consideration that defendant would execute a receipt for the due-bill and a paper entitling the plaintiff to the amount of his mortgage on the defendant's death, and that the defendant at the filing of the bill was and had been since the said transfer in possession of said premises, receiving the rents, income and profits thereof.

The prayers of the bill were: (1) For a decree declaring that the deeds of conveyance referred to were void and that the defendant be required to deliver them to the plaintiff to be canceled: (2) That the plaintiff be decreed to be the sole and only heir at law of the said Charles F. Meurer; (3) for discovery, and (4) for an account.

The defendant's answer, in so far as the allegations of the bill were not admitted, averred :

That the defendant was the son, not only of the said Marie H. Schmidt, but also of the said Charles F. Meurer, and he was not informed on attaining his majority that he was not the son of said deceased, and the plaintiff was not of such weak mind and intellect and so illiterate as to render him incompetent to transact business.

That at the time of the death of said Charles F. Meurer it was believed he had died intestate, but since the settlement of his estate, by which settlement the estate was indebted to the defendant, a last will and testament of said deceased had been discovered and had been duly admitted to probate :

That the conveyances of the property on Walnut street were for good and valuable consideration ; the defendant was the owner of the same in fee, and, since he had purchased, he had made valuable improvements of which the plaintiff had knowledge, and had reduced the mortgage incumbrance there on from $4,000 to $2,000; that the confidence of the plaintiff in the defendant had never been violated, and defendant had made no fraudulent misrepresentations of any kind whatever, and the plaintiff at the time of the transaction was represented by an experienced and reputable conveyancer.

That the mortgage executed to the plaintiff in consideration of his conveyance, was for $1,000, as the one half of $2,000, the plaintiff's interest in the premises, and the bond and mortgage were to remain as an investment for the use and benefit of the plaintiff during his lifetime ; that defendant had paid interest on said mortgage for which he held plaintiff's receipts, and at the settlement between the plaintiff and defendant, the plaintiff gave the defendant his due bill for $1,248, and defendant signed a paper to the effect that said due-bill should not be used as a set-off against the mortgage during the life-time of the plaintiff, and that at said settlement, which was in the presence of the conveyancer, everything was fully and carefully explained to the plaintiff, who was not induced by the defendant by any manner of solicitation, representation or influence to sign the due-bill, and the papers were put in the possession of the defendant at the special request of the defendant.

The answer urged that inasmuch as a decree was sought declaring the deeds to and from the said Gustav Vogt to be void and canceled, without offering to place the defendant in statu quo before the execution thereof, the bill should be dismissed, etc.

From the testimony per testes and taken upon commissions to Kehl and Ulm, Germany, reported by *Mr. John H. Campbell*, the examiner appointed, it appeared that Charles F.

### Statement of Facts.

Meurer, the deceased, had first gone to Strasbourg in 1840 and there for the first time met Marie H. Schmidt, who was then an unmarried woman, but the mother of the defendant and one other child that afterwards died; that the plaintiff was another son by the said Charles F. Meurer, born in 1843, and the parents were married in 1844; that by official proceedings under the Act of Marriage, in accordance with the provisions of the Code Napoleon, Charles Meurer, the plaintiff was legitimated, but no mention was made in the records of Edward F. I. Schmidt, now called Meurer, the defendant.

That the parents of the plaintiff came to Philadelphia in 1852, the defendant remaining and continuing a member of the family, and in 1865, Mr. Meurer purchased the premises in dispute, at sheriff's sale, for $6,000 subject to the ground-rent of $36; that both husband and wife died in 1875; that the defendant took out letters of administration, though having a will of Charles F. Meurer in his possession, and subsequently filed an account showing a balance due from the estate to himself; that a substituted account was afterwards filed, showing a balance due the estate, which had not been distributed; that the plaintiff was unable to read and write except his name, and was wholly ignorant of business, his sight and hearing were impaired and he was weak of mind; that, taking advantage of the plaintiff's weakness and confidence, the defendant, by fraudulent representations, shown in detail, had procured the deed referred to for the plaintiff's interest in the real estate in the manner alleged in the bill, for a mortgage on it for $1,000, afterwards obtaining from the plaintiff a due bill for $1,248, purporting to be for board and lodging, agreeing, however, that the due-bill should not be used as a set-off against the mortgage in the lifetime of the plaintiff.

On December 16, 1885, upon hearing on bill, answer and testimony, the court, LUDLOW, P. J., made a decree :

1. That the deeds from Charles Meurer, and Edward F. I. Meurer and wife, dated August 12, 1876, to Gustav Vogt, and the deed from Vogt, dated August 14, 1876, to Edward F. I. Meurer, conveying the premises No. 1025 Walnut, were null and void.

2. That Charles Meurer was the sole heir at law of Charles F. Meurer, deceased, and as such entitled to his estate, real and personal.

3. That Edward F. I. Meurer should forthwith vacate the premises, No. 1025 Walnut, and deliver possession thereof to Charles Meurer.

4. That the cause be referred to Mr. Campbell, as master, to state an account of the rents, income and profits received by the defendant and to report the facts relating thereto and the form of a decree.[3]

The next step in the cause was the presentation of a petition by Caroline E. Feigle, setting out that she was the sister of Charles F. Meurer, deceased, and the aunt of Charles Meurer, the plaintiff, who was ignorant, of weak intellect, defective sight and hearing and wholly unable to transact or conduct the ordinary affairs of life, facts already found in the cause, the foregoing proceedings being recited; that, whilst the hearing before the master in the stating of the account was proceeding, to wit, on February 25, 1886, the said Edward F. I. Meurer, taking advantage of said Charles Meurer and preventing him from consulting his counsel or other advisers, procured from him a conveyance direct to himself of the Walnut street premises in consideration of a mortgage thereon for $1,000, which deed and mortgage had been lodged for record in the office of the recorder of deeds; wherefore the said defendant was in contempt of the decree of the court, praying for an attachment of the defendant, and that the petitioner be permitted to join with the plaintiff in the proceedings as his next friend, and for further relief.

Upon this petition a rule was granted upon the defendant to show cause why an attachment for contempt should not issue, to which rule the defendant made answer, in substance denying any and every allegation in the petition alleging that the defendant had committed any fraud upon the rights or interest of the plaintiff, but admitting that on February 25, 1886, he had obtained from the plaintiff a conveyance of the premises in dispute in consideration of $500 in cash and a mortgage for $1,000, and had also obtained from him a release from any and all cause or causes of action, etc., claims and de-

mands etc., and of and from all rents, income, and profits that had arisen or might arise from the said premises and from any and all decree or decrees that had been or might be entered in the foregoing proceeding, etc., etc.; averring further that said settlement had been brought about at the solicitation of the plaintiff who was of sound mind, memory and discretion, of full age and wholly competent to transact business, a copy of said release being attached to the answer.

On March 13, 1886, upon the foregoing petition and answer and the testimony submitted by the parties on the hearing thereof, the court, GORDON, J., ordered and decreed that the defendant, Edward F. I. Meurer, be enjoined from dealing or negotiating with the plaintiff, Charles Meurer, or any other person, respecting the title or possession of the premises No. 1025 Walnut street: "And it appearing to the court from the said petition and answer, and from the testimony submitted by the parties, and from the oral examination of the complainant upon the hearing had upon the said petition and answer, that the complainant, Charles Meurer, is, by reason of mental weakness, incompetent to have the care and control of his property and estate, and unable to protect his rights and interests involved in the present proceeding," the court appointed Leonard R. Fletcher, Esq., trustee, to take and hold possession of the said premises until the further order of the court, and ordered that the name of Caroline E. Feigle be entered upon the record a party complainant as the next friend of Charles Meurer. It was further ordered that the agreement, deed and mortgage relating to said premises, executed on February 25 and 26, 1886, be delivered up by the recorder into the custody of the court, and that an attachment forthwith issue against the defendant, who was thereby placed in custody, until he should surrender the premises in dispute to the said trustee appointed.[1]

On September 10, 1886, the master filed his report stating an account of the rents, issues and profits of the premises in dispute, finding that there was due from the defendant to the plaintiff the sum of $2,334.91, and recommending a decree for the payment thereof. To this report numerous exceptions were filed by the defendant.

On the hearing on December 21, 1886, the exceptions to the master's report were dismissed, the report confirmed, and it was ordered, etc., GORDON, J., that the defendant, Edward F. I. Meurer, pay to Caroline E. Feigle, next friend of the complainant Charles Meurer, the sum of $2,334.91.[4]

As a final movement in the court below, on December 28, 1886, Charles Meurer, the plaintiff, presented his petition reciting in substance all the foregoing proceedings and orders, and, representing that he was not consulted as to the filing of said petition by Caroline E. Feigle, and never authorized or directed that it should be presented; that he never requested, authorized or desired said petitioner to act as his next friend in said proceedings, but, on the contrary, he believed her to be unfriendly to himself and hostile to his wishes and interests; that it did not appear that either said petitioner or Leonard R. Fletcher, Esq., were ordered to give security for their faithful accounting for all property that might come into their hands; that he was not then and never was, by reason of mental weakness, incompetent to have the care and control of his property and estate, nor had he ever been found to be so by any inquisition issued to inquire into his lunacy, prayed the court to vacate and set aside the appointment of said trustee and of the said next friend, as in said decree of March 13, 1886, set forth, and that an order be made restraining the defendant, Edward F. I. Meurer, from paying the said $2,334.91 to any other person than to himself.

On January 3, 1887, the prayer of this petition was refused, and the petition dismissed.[2]

Then Charles Meurer took the appeal to No. 396 January Term 1887, assigning that the court erred:

1–6. In the several orders of the decree entered on March 13, 1886.[1]

7. In the order dismissing his petition of December 28, 1886, entered on January 3, 1887.[2]

8. In proceeding further with the cause after the settlement made between the plaintiff and defendant on February 25, and 26, 1886.

And Edward F. I. Meurer took the appeal to No. 89 January Term 1888, assigning that the court erred:

Arguments.

1–4. In the several orders of the decree entered on December 16, 1885.[3]

5–6. In the several orders of the decree entered on March 13, 1886.[1]

7. In dismissing the defendant's exceptions to the master's report, stating an account, and in confirming said report; and in the order that the defendant pay to the said Caroline E. Feigle as the next friend of the plaintiff the sum of $2,334.91, the amount found by the master, as in the decree entered December 21, 1886.[4]

*Mr. Alfred Guillou*, for Charles Meurer, appellant:

All the proceedings and decrees taken and made in this case subsequently to the settlement of the cause in February, 1886, are wholly illegal and void.

1. Prior to the Pennsylvania statutes, which are conclusive of this question, equity jurisdiction never extended to the fact of lunacy. The lunatic was the ward of the crown, and subsequently, through the crown's commission, of the chancellor, but the fact that a person was a lunatic was a question always to be decided by a jury: Collinson, Lunacy, 107; 3 Black. Com. 427*; Bryce v. Graham, 2 Shaw, App. C., 513. Occasionally, upon the insufficiency of funds, or upon the consent of all parties in interest, including the lunatic himself, the chancellor has dealt with a person as a lunatic without any inquisition: Machien v. Salkeld, 2 Dick. 634; Bird v. Lefevre, 4 Br. C. C. 100; Eyre v. Wake, 4 Ves. Jr., 795; Ex parte Pickard, 3 V. & B. 127; Ex parte Farron, 1 Russ. & M. 112; Conduit v. Sloane, 5 Mylne & Cr. 111; Light v. Light, 25 Beav. 248; Williams v. Allen, 33 Beav. 241. In other cases it is refused: In re Crompton, 5 Russ. 152; Gilbee v. Gilbee, 1 Phillips 121; Orwig's Case, 1 Bland 290; Halfhide v. Robinson, L. R., 9 Ch. App. 373; Dorsheimer v. Roorback, 3 Green C. E. 439; Story Eq. J., §§ 1335–6, 1361.

2. Since the Pennsylvania statute, act of June 13, 1836, P. L. 592, the chancery power conferred by the constitution upon the Courts of Common Pleas, in the care of the persons and estates of those who are non compos mentis, is, so far as the fact of lunacy goes, the power simply of directing that fact to be inquired of by a jury: Kennedy v. Johnston, 65

Pa. 451; act of March 21, 1806, 4 Sm. L. 332; In re Weaver, 116 Pa. 225; Richards v. Rote, 68 Pa. 248.

3. The plaintiff's settlement of the litigation was by no means for an insufficient consideration. Moreover, he does now and always has considered the cessation of hostilities and his becoming a member of his brother's family, a greater gain than any which a decree of court could give. A settlement of family litigation is always to be favored; Bierer's App., 92 Pa. 265; Bispham's Eq., § 189.

*Mr. William W. Porter* (with him *Mr. Frederick J. Geiger,*) for Caroline E. Feigle, the appellee:

1. This appeal should be quashed. (1) Because the appointment of the appellee as the plaintiff's next friend was an exercise of discretionary power and not reviewable: Hill v. Irwin, 32 Pa. 314; White v. Leeds, 51 Pa. 187; Gump's Appeal, 65 Pa. 476; Gest's Case, 9 S. & R. 317. (2) Because the appellant is not now a party upon the record entitled to appeal, inasmuch as he is represented by his next friend.

2. The court had ample jurisdiction. At common law whenever the rights and interests of persons who are non compos mentis are placed in jeopardy, the court will assume control by virtue of its great powers to protect these rights: Wrigg v. Tyler, 2 Dick. 553; 2 Story Eq. J., 561, 585; Light v. Light, 25 Beav. 248; Conduit v. Sloane, 5 Myl. & Cr. 111; In re Berry, 13 Beav. 455; In re Irby, 17 Beav. 334; Sherwood v. Sanderson, 19 Ves. 280; Shelf., Lun., 416; Dan., Ch. Pr., 86; Jones v. Lloyd, L. R. 18 C. P. 275. In the case last cited, the court entertained an original bill filed by a next friend; in the present case, the court simply permitted a next friend to intervene to protect an imbecile from a fraud.

3. The powers of a court of equity in Pennsylvania in this respect are as ample as those of the English court of chancery: Bispham's Eq., 400: McElroy's Case, 6 W. & S. 452; Black's Case, 18 Pa. 434. The power to find that a person is of weak mind is conferred by the constitution and cannot be said to be circumscribed by the act of 1836, giving to courts of Common Pleas the power to issue a commission. The finding of a jury of inquest is not conclusive upon the court: Miskey's App., 107 Pa. 626. The fraud in this case cannot be called a compromise, a family settlement.

Arguments.

*Mr. F. Carroll Brewster* (with him *Mr Frederick L. Breitinger* and *Mr. Charles Davis*), for Edward F. I. Meurer, appellant:

1. The decree annulling the conveyances to and from Gustav Vogt was a grave error. The value, $12,000, put on the premises in 1886, covered the improvements made by the defendant. The transaction was between brothers, and it is natural to presume they considered the consideration adequate. But even if inadequate, that of itself would not be enough to cancel the transaction: Cummings's App., 66 Pa. 404. Fraud must be proven, and in this the plaintiff failed. The parties believed themselves brothers and acted in accordance therewith. Mere mental weakness, not amounting to inability to comprehend a contract, when unaccompanied by evidence of imposition or undue influence, is not a ground for equitable interference: Graham v. Pancoast, 30 Pa. 89; Nace v. Boyer, Idem 99. There was no attempt to find the plaintiff to be a lunatic by due process of law, and a court of equity, with powers as extensive as space itself, would not deprive a citizen of his property without due process of law.

2. The testimony (reviewed) did not afford evidence sufficient to warrant the decree that the plaintiff was the sole heir at law. Access was not disproved. A mere probability of non-access will not rebut the presumption of legitimacy: Cross v. Cross, 3 Paige 132; Banbury Peerage, 1 Sim. & S. 153; Stegal v. Stegal, 2 Brock. C. C. 256; Bowels v. Bingham, 2 Munf. 442; Kleinert v. Ehlers, 38 Pa. 439. Where a child is born in 1839, and the mother is married in 1844, to the man who is admitted to be the father of one of her illegitimate children, it is a violent presumption that he is the father of the other children; to rebut which presumption there must be such affirmative proof as will show conclusively that the husband could not be the father: Phillips v. Allen, 2 Allen 453.

3. The conveyance of the premises being legal, any order requiring the defendant to account for the rents and profits would be error.

4. The entertaining and acting upon the petition of Caroline E. Feigle, a wholly disinterested party, was an assumption of judicial power without precedent. The decree was a declaration on the part of the court, unaided by proper testimony

(reviewed), that the plaintiff was a lunatic, found to be so without inquisition or other proceeding under the law.

5. The plaintiff's bill should have been dismissed: (1) Because there was no offer to place the defendant in statu quo: Nulton's App., 103 Pa. 286: (2) Because of the plaintiff's laches, the conveyance taking place in August, 1876, and the bill filed in January 1884; Ashurst's App., 60 Pa. 290; Evans's Appeal, 81 Pa. 278; Neely's App., 85 Pa. 387; Bickell's App. 86 Pa. 204; (3) because the proceeding was an ejectment bill to try the title to the premises in dispute: Nulton's App., 103 Pa. 286; Kelly's App., 108 Pa. 29.

*Mr. Frederick J. Geiger* and *Mr. W. W. Porter*, for Caroline E. Feigle, the appellee:

1. Three methods of establishing the illegitimacy of the defendant were adopted in this case; (1) evidence of non access; (2) certificates of marriage and birth; (3) the declarations of deceased members of the family made ante litem motam. The law is not so unreasonable as to demand absolute and positive evidence of non-access: Commonwealth v. Wentz, 1 Ash. 271; Commonwealth v. Shepherd, 6 Binn. 283; Dennison v. Page, 29 Pa. 425.

On account of the relationship between the parties, placing the defendant in such a position that he could not purchase from the plaintiff except in the most open and fair manner, the burden of proof of the bona fides of the transfer was upon the defendant: Cooke v. Lamatte, 15 Beav. 240; Sharp v. Leach, 31 Beav. 491; Darlington's App., 86 Pa. 512; Perry on Trusts, §§ 190, 210; Juzan v. Toulman, 9 Ala. 662; Greenfield's Est., 14 Pa. 489; Miskey's App., 107 Pa. 626; Turner v. Collins, L. R. 7 Ch. App. 329; Adams, Eq., 184; Crowe v. Ballard, 1 Ves. 215; Clark v. Malfas, 31 Beav. 80; Diller v. Brubacker, 52 Pa. 498; Wistar's App., 54 Pa. 60; Spencer's App., 80 Pa. 317; Parshall's App., 65 Pa. 224; 2 Lead. C. in Eq., 556*.

3. There was actual fraud shown. Great inadequacy of price is evidence of fraud: Hamet v. Dundass, 4 Pa. 178; Davidson v. Little, 22 Pa. 245; deeds have been set aside on the ground of inadequacy of consideration alone; Berney v. Pitt, 2 Vern. 14; Knott v. Hill, 2 Vern. 27; Wiseman v.

Beake, 2 Vern. 121; Stanhope v. Tappe, 2 Br. P. C. 1; 83; Garinne v. Heaton, 1 Br. P. C. 1; Heathcote v. Paignon, 2 Bro. C. C. 167; Pickett v. Loggon, 14 Ves. 215.

4. As to the power to act upon the petition of Caroline E. Feigle, reference is made to argument for appellee in Charles Meurer's appeal.

5. Family agreements of compromise, tainted with fraud, will be set aside like all other agreements similarly vitiated: 2 Lead. C. in Eq., 1731; Walmesley v. Booth, 2 Atk. 25; Purcell v. McNamara, 14 Ves. 91: Clark v. Malfas, 31 Beav. 80; Chesterfield v. Janssen, 1 Atk. 301.

6. Actual fraud having been found, in the account of the rents and profits the defendant was entitled to no allowance for what he had expended in repairs, taxes and improvements: Eberts v. Eberts, 55 Pa. 110; Gilbert v. Hoffman, 2 W. 66; McCaskey v. Graff, 23 Pa. 321; Sharp v. Long, 28 Pa. 433; Riddle v. Murphy, 7 S. & R. 230.

7. The defendant has obtained the property by his own fraudulent acts, and cannot ask to be placed in statu quo: Sands v. Codwise, 4 Johns. 536; Gilbert v. Hoffman, 2 W. 66; Riddle v. Murphy, 7 S. & R. 230; McCaskey v. Graff, 23 Pa. 321; Jackson v. Summerville, 13 Pa. 359; Eberts v. Eberts, 55 Pa. 110.

8. The bill is not an ejectment bill. An examination of all the authorities in Pennsylvania, from North Penn. Coal Co. v. Snowden, 42 Pa. 488, to Meck's Appeal, 97 Pa. 313, will show that the cases in which bills were held to be mere ejectment bills, were when a party out of possession attempted to recover possession upon a purely legal title, and there were no questions of fraud, accident or mistake, or any relation of trust between the parties. The statutes conferring equity jurisdiction upon the courts are: § 13, Act of June 16, 1836, P. L. 789; § 39, Act of April 13, 1840, P. L. 671; § 3, Act of April 16, 1845, P. L. 542. Equity has plenary jurisdiction in cases of fraud, though there may be a remedy at law: Ressler v. Whitner, 1 Pears. 174; Gandolfo v. Hood, 1 Pears. 269; Ferris v. Henderson, 12 Pa. 49; Socher's Appeal, 104 Pa. 614. Because there was concurrent jurisdiction, after the defendant had answered on the merits no objection to the jurisdiction could be taken: Bank v. Bank, 1 Pars. 222.

## CHARLES MEURER'S APPEAL.

OPINION, MR. JUSTICE STERRETT: ·

The bill in equity filed January 11, 1884, by appellant, Charles Meurer, against Edward F. I. Meurer, was so proceeded in that on December 16, 1885, the court below adjudged and decreed that appellant was the son and sole heir-at-law of Charles F. Meurer, deceased, and as such entitled to the real and personal estate of which his father died seized; that certain conveyances of premises No. 1025 Walnut street were fraudulent, null and void, and referred the case to a master to take an account of the rents, issues and profits of said premises, received by defendant while he was in possession thereof.

Pending proceedings before the master, the parties came together and effected a settlement, in pursuance of which appellant executed a release, discharging defendant from any and all decrees that had been or might be made in the case, and from all claims or demands in law or equity which he ever had against him, and at the same time, February 25, 1886, delivered to defendant a deed in fee for said premises. In return therefor, defendant gave appellant $500 in cash and a mortgage of said premises for $1,000.

Subsequently, Caroline E. Feigle, representing herself as the sister of appellant's deceased father, and nearest relative now being in the United States, presented her petition setting forth, inter alia, that he "is an ignorant man, of weak intellect, with defective sight and hearing, and is now wholly unable to transact or conduct the ordinary affairs of life;" that, after the decree above referred to, and pending proceedings before the master to state an account, etc., the defendant, Edward· F. I. Meurer, in contempt of said decree, taking advantage of the ignorance and mental weakness of appellant, by fraud and undue influence procured from him, for a trifling consideration, a conveyance of the premises aforesaid, valued at $12,000, etc.; and praying that defendant be attached for contempt of court in failing to comply with its former decree to deliver possession of said premises to appellant, and for "further contempt of said decree in committing the fraud of procuring a conveyance of the said property in the same manner and with the same fraudulent intent, as complained of in the bill originally

filed by the said Charles Meurer;" and further praying "that she be permitted to join the complainant, Charles Meurer, as his next friend," etc.

. Defendant having been cited, appeared and made answer, denying the charges of contempt, fraud, etc., contained in the petition; and, after hearing testimony submitted by the parties, and on oral examination of appellant, etc., the court, on March 13, 1886, made a decree, enjoining defendant from dealing or negotiating with appellant or any other person respecting the title or possession of said premises; adjudging appellant "incompetent, by reason of mental weakness, to have the care and control of his property and unable to protect his rights and interests involved in the present proceedings;" appointing a "trustee to take and hold possession of the property" aforesaid; directing the name of Caroline E. Feigle to be entered of record as next friend of appellant; impounding the agreement, deed and mortgage, relating to the premises aforesaid, executed at the time of alleged settlement in February, 1886; attaching defendant, and placing him in the custody of the officer of court, "to be so held until he shall deliver up and surrender the possession of the premises . . . . to the trustee hereinbefore appointed."

The report of the master was afterwards filed and excepted to, and on December 21, 1886, the court dismissed the exceptions and ordered defendant, Edward F. I. Meurer, to pay to Caroline E. Feigle, next friend of appellant, the sum of $2,334.91. A few days thereafter appellant presented his petition complaining of the interference of his aunt and the action taken in pursuance of her petition, denying he was incompetent to have the care and control of his property or had ever been so found, and praying the court to vacate its orders and decrees based upon the allegations contained in her petition, etc. The relief thus asked was denied and the petition dismissed, and thereupon this appeal was taken.

It will be observed that the several orders and decrees complained of are the outgrowth of the Feigle petition, and have practically nothing to do with the previous proceedings in the cause, but they have been briefly outlined with a view of presenting more distinctly the position of the parties.

The general and in fact controlling question, presented by

the specifications of error, is, whether a chancellor in this state has the power at the instance of a third party to institute a summary inquiry as to the sanity of a suitor before him, decree him insane, and proceed to make such orders and decrees as are complained of in this case. The decree, it is true, does not in express terms declare appellant insane, but it adjudges him, "by reason of mental weakness, incompetent to have the care and control of his property and estate and unable to protect his rights and interests which are involved in this proceeding." This is practically an adjudication that he is non compos mentis.

Assuming, as we should, for purposes of the present inquiry, that the adjudication was warranted by the evidence, we are of the opinion that the court had no jurisdiction of the subject in the form of proceeding that was adopted, for the reason that the act of June 13, 1836, relating to lunatics and habitual drunkards, passed to carry out the provision of the constitution which invests our courts with chancery powers so far as relates to "the care of the persons and estates of those who are non compos mentis," prescribed a special mode of proceeding to determine the fact of insanity or habitual drunkenness, as the case may be. The act of March 21, 1806, provides that "in all cases where a remedy is provided or a duty enjoined or anything directed to be done by any act or acts of assembly . . . . the directions of said acts shall be strictly pursued." Whatever may have been the jurisdiction and power of a chancellor prior to the act of 1836, to inquire of and determine the fact of insanity, it is very clear that, since its passage, such inquiries must be conducted in the mode prescribed by the act and its supplements, and not otherwise.

In early times, commissions to inquire into the fact of lunacy were issued directly by the crown to the sheriff, coroner, escheator, or to any private citizen by whom the inquest was made, "assisted as in other cases by a jury of the county." Subsequently they were issued to the chancellor, who acted not virtute officii, but by virtue of the special commission from the crown; and the principle, that the question of mental weakness, idiocy, or lunacy is always one of fact to be determined by a jury, has been constantly recognized in England except in a very few cases, where for special reasons allowances have

been directed for the maintenance of persons non compos, but not so found upon inquisition. The action of the chancellor, in the exceptional cases referred to, was based upon the insufficiency of funds to defray the expenses of a commission, and upon consent of all parties in interest: Collinson on Lunacy, 107, 550; Bryce v. Graham, 2 Shaw's App. Cases 513; 3 Black. Com. 427. The lunatic was regarded as a ward of chancery, not of its own general jurisdiction, but by virtue of the royal commission issued to the chancellor; and, as a rule, the question of lunacy has always been one of fact for the sole determination of an inquest.

In the absence of legislation to the contrary, the same rule has been adhered to in this country: Orwig's Case, 1 Bland 290; Story's Eq. Jurisp. §§ 1335, 1336, 1361; In re Weaver, 116 Pa. 225.

If a party to a suit in equity is insane or becomes so pending the proceeding, and that fact becomes apparent to the chancellor, he has doubtless the power to make such orders in the premises as will preserve the status quo of the cause, and thus afford an opportunity to those, whose interest or duty it may be to do so, to institute proper proceedings for the determination of the question of insanity and appointment of a committee to represent the non compos and protect his interests; but, in view of what has been said, he has no power to assume jurisdiction and determine the fact of insanity himself. After a person has been found insane in the mode pointed out by the law, jurisdiction of his person and estate cannot, of course, be questioned.

The action complained of was no doubt prompted by a commendable desire to protect appellant from the consequences of his own imbecility and the rapacity of one by whom he had recently been defrauded of his patrimony. If he is in fact non compos mentis, and is hereafter regularly found to be so, his duly appointed committee will be in a position to ask for redress if any fraud has been practiced upon him.

It follows from what has been said that the first seven specifications of error must be sustained. As to the eighth and last specification, it is not sustained. It does not appear that the alleged settlement was so interposed as a bar to further proceedings, as to justify the court in treating it as a bona fide settlement of a pending controversy.

The orders and decrees, specified in the first to the seventh assignments of error inclusive, are reversed at costs of appellee, and it is ordered that the record be remitted to the court below for further proceedings according to equity practice.

## EDWARD F. I. MEURER'S APPEAL.

This case is a companion of Charles Meurer's Appeal, No. 396, of January Term, 1887, in which we have just entered a decree. The proceedings in which both contentions originated have been sufficiently outlined in the opinion filed in that case, and hence they need not be re-stated here. The fifth and sixth specifications in this case, and also the last clause of the seventh, present substantially the same questions that were involved in the first seven specifications of error in the other case, and, inasmuch as they have been considered and disposed of in the opinion referred to, further discussion of them is deemed unnecessary. For reasons there given, the fifth and sixth assignments of error, and last clause of the seventh, practically common to both cases, are sustained.

The subjects of complaint in the first to fourth specifications, both inclusive, are the decree of December 16, 1885, and its provisions, neither of which were involved in Charles Meurer's Appeal. That decree is predicated of the facts that Charles Meurer is the sole heir-at-law of his father, Charles F. Meurer, deceased, and as such inherited the premises No. 1025 Walnut street, of which his father died seized and intestate; that the title to said premises was fraudulently obtained from him by appellant, Edward F. I. Meurer, who was neither of kin to said intestate, nor in any manner entitled to the property.

Without considering the evidence in detail, it is sufficient to say, these and other facts, satisfactorily established by the proofs, justified the court below in decreeing that the deeds of conveyance made by Charles Meurer and Edward F. I. Meurer and wife, to Gustav Vogt, and by said Vogt to Edward F. I. Meurer, conveying said premises to the latter, and the mortgage thereof executed by him, were null and void; that Edward F. I. Meurer forthwith vacate said premises, and deliver possession thereof to said Charles, and referring the case to a master to take an account of the rents, issues, and profits of the premises, received by appellant while he was wrongfully in possession thereof.

It follows that the first four specifications are not sustained, and the decree of December 16, 1885, should be affirmed. As to the decree dismissing appellant's exceptions to the master's report stating an account, and confirming the same, complained of in the first clause of the seventh specification, there was no error. It was the legitimate result of the decree of December 16, 1885, and order of reference therein made. For reasons given in the opinion above referred to, the fifth, sixth, and last clause of the seventh, assignments are sustained, and the orders and decrees therein specified should be reversed and set aside.

> Decree of December. 16, 1885, and orders embodied therein, and also the decree confirming the account stated by the master are affirmed; the orders and decrees of March 13, 1886, specified in the fifth and sixth assignments of error, and the decree of December 21, 1886, specified in last clause of seventh assignment, are reversed. And it is further ordered that apellant pay the costs of this appeal, and that the record be remitted to the court below for further proceeding in accordance with equity practice.