## Cunningham's Petition

*John C. Gaut*, for petitioner.

*William T. McDowell*, for Borough of Scottdale.

LAIRD, J., March 9, 1946.—On September 14, 1938, Sheldon Cunningham purchased a lot of ground in the Borough of Scottdale, on which was erected a three-story brick building, containing a store room and apartments.

As we understand the matter, the former owner of this property had not only failed to pay the taxes assessed against the premises by the various taxing authorities for a number of years, but had also defaulted in the payments due on account of the debt and interest of a certain mortgage, which was a lien on the property. However, these matters seem to have been straightened out by a compromise settlement between the purchaser, the former owner, the mortgagee and the county commissioners so that the record was clear and a transfer of title was made.

It is claimed, however, by the purchaser, Sheldon Cunningham, that at the time of this settlement the county commissioners agreed to reduce the assessed valuation of the property from $5,500, the amount at which it was assessed at the time, to $2,750.

Apparently this was not done, for as we understand the testimony of William R. Hohn, a member of the Board of Assessment and Revision of Taxes of Westmoreland County, the assessed valuation of the property in question for taxable purposes was continued at $5,500 until the latter part of the year 1945, when the present owner, Sheldon Cunningham, took an appeal from such valuation and it was then reduced to $4,625.

The matter comes before the court at this time on the petition of Mr. Cunningham, joined in by the county commissioners, praying the court to approve a com-

promise settlement of the delinquent taxes of the said property for the years 1938 to 1945, both inclusive, for $1,388.67.

It is somewhat difficult to understand the petition but as we read it and the testimony taken at the hearing had in open court, we find that the property in question was sold by the county treasurer for the nonpayment of taxes for the years 1938 to 1942, both inclusive, purchased by the county commissioners and that it has not been redeemed and the period of redemption has expired. The property has not been sold for the taxes of 1943, 1944, and 1945, which still remain unpaid.

The burden of petitioner's complaint seems to be that the county commissioners did not keep their word; that the assessed valuation was not reduced to $2,750, as promised, but that it was allowed to remain at the excessive amount of $5,500, and that such an assessed valuation is too high; that petitioner stands able, ready and willing to pay the delinquent taxes for the years mentioned, 1938 to 1945, both inclusive, if they are levied on a reduced valuation or to compromise the whole for $1,388.67.

We are not clear as to the exact amount of the delinquent taxes, interest and penalties due, but according to our figures they amounted to $2,153.65 on December 15, 1945.

The offer of Sheldon Cunningham to compromise the taxes seemed to be acceptable to the county commissioners for they joined in the petition. The School District of the Borough of Scottdale, having filed no objection to the proposed compromise, may be considered to have no objection to such a settlement, but the borough council strenuously objects to any such settlement and points out that there is no warrant or authority in the law for the changing of the assessed valuation or the making of a levy of taxes on a new valuation of a single property at this late date.

The proceeding is under the Act of May 21, 1937, P. L. 787, and its several amendments, the last of which is Act of May 16, 1945, P. L. 603, 72 PS §5878(a) et seq. and the borough rightly contends that this act makes no provision for a reassessment or revaluation of the property for taxable purposes and that inasmuch as the Act of June 26, 1931, P. L. 1379, 72 PS §5342 et seq. provides a full, adequate and complete method for testing the validity of the assessments fixed by the board, the assessments may not be subjected to collateral attack in proceedings such as the present one. We agree with the borough that it has always been the law of this State that the property owner should appeal to the board or to the court in case he is not satisfied with the valuation placed upon his property for taxable purposes.

A complete remedy at law having been provided for petitioner herein, he is bound to follow or resort to it: See section 13 of the Act of March 21, 1806, P. L. 558, 4 Sm. L. 326, 46 PS §156; see also Meurer's Appeals, 119 Pa. 115-130, Lewisburg Bridge Co. v. County of Union et al., 232 Pa. 255-264, Ebur et al. v. Alloy Metal Wire Co., 304 Pa. 177-185, and Heller et ux. v. Fishman et al., 278 Pa. 328.

However, petitioner argues strenuously that the county commissioners have the right and authority to adjust petitioner's delinquent taxes and amend the assessed valuation of his property for the purpose and cites In re Rice Taxes, 40 D. & C. 642, and In re Cinci Taxes, 44 D. & C. 142, wherein the late President Judge Dumbauld of the Court of Common Pleas of Fayette County seems to countenance such a proposition. We have always entertained a high opinion and regard for Judge Dumbauld as a man, a lawyer and a judge, but cannot agree with him in this matter. The law and the decisions in Pennsylvania have always been the other way: See Philadelphia v. Phillips, 65 Pa. Superior Ct. 578, Dougherty, Trustee, v. Philadelphia

et al., 314 Pa. 298, and Philadelphia v. Dougherty, 153 Pa. Superior Ct. 554, where Judge Keller said, quoting from page 559:

". . . the sole and exclusive remedy of the property owner is to appeal from the assessment to the board of review, and if dissatisfied with the latter's action, to appeal from its decision to the court of common pleas, . . . with the further right of appeal to the Supreme or Superior Court. If no appeal is taken from the assessment of taxes within the time allowed by law it becomes binding and conclusive; . . ."

We think Judge Barthold expresses it very well in his opinion on Knowles' Petition, 50 D. & C. 494, quoting from page 498:

"It would be anomalous indeed if tax compromises could be based solely on the ground that assessments for prior years had been too high. If such were the rule, it would inevitably follow that the courts would constantly be called in tax compromise proceedings to reëxamine assessments for the years during which taxes have become delinquent. The tax compromise acts do not give us such authority and the appellate decisions of our courts specifically prevent collateral attacks upon tax assessments."

The power to revalue or reassess the property in question for taxable purposes must, therefore, be denied, but the question of compromise is another matter, and we are of opinion that the court may approve a compromise of taxes by a municipality with the property owner notwithstanding another municipality equally interested may object, although we are reluctant to do so in the instant case.

An interesting discussion on this question appears in the opinion of President Judge Braham, of Lawrence County, in Weible's Tax Compromise, 48 D. & C. 213. The learned jurist in quoting Chief Justice Gibson said, quoting from page 216:

" 'It consists not with the justice or the dignity of a free government to confiscate the estates of its citizens;

or make them bear more than their respective proportions of the public burdens; or to speculate on their short-comings as sources of increased revenue.'

"In Philadelphia v. Schaefer et al., 269 Pa. 550, 552, it was stated: 'The privilege of redemption has always been liberally construed in Pennsylvania under the various acts of assembly regulating tax sales.' . . . The typical case for compromise is one where the property is not worth the tax. But there are also cases where the former owner is in financial distress and likely to become a charge if he is evicted from his home, in which case we may appropriately find that it is to the advantage of the municipality to accept a lesser amount from a compromise even although a larger amount may be realized from the sale."

Such a condition does not exist in the instant case; at least there is no evidence to that effect. Petitioner is not indigent, but according to his own statement is able, ready and willing to pay the taxes if they can be levied and assessed on what he considers to be a fair and reasonable valuation. Yet he waited nine years and allowed the taxes to become delinquent before attempting to test or question the judgment of the taxing authorities in levying the assessment or fixing the valuation for taxable purposes.

In Scanlon's Petition, 48 D. & C. 222, Judge Braham, speaking on the same question, said, quoting from page 224:

"In any case the guiding principle is the same—the disposition authorized must be 'to the advantage of all the taxing authorities interested.' . . . This is the question."

The law has always favored allowing the former owner to pay the back taxes on lands bought by a county at tax sale without approval of court. This is by payment of taxes with interest and costs but less penalties, under the Act of July 17, 1935, P. L. 1091, sec. 1, 72 PS §5879. So many petitions to approve a compromise

of delinquent taxes are presented to the court that we are becoming suspicious that the law may be abused.

In the instant case it is proposed to compromise taxes in the amount, at least, of $2,153.65 on a property admittedly worth $9,250 for $1,388.67. We do not consider this amount to be sufficient. We do not believe it to be fair to the protesting municipality, the Borough of Scottdale, which from time to time during the nine years petitioner sat quietly by and allowed the taxes to accumulate, used the assessment, of which complaint is now made, together with others in the district as the basis for budget and millage action. Neither do we believe such a proposition to be fair to the residents and other taxpayers of the Borough of Scottdale, who paid their taxes when levied and assessed, thereby keeping the wheels of the local government moving and affording the petitioner herein police and fire protection.

Petitioner herein has failed to show that the delinquent taxes amount to more than could be realized by an enforced sale of the property. It appears from the testimony that the property is worth at least four times the amount of the delinquent taxes and it does not appear that petitioner is indigent or liable to become a charge on the community or in fact that there is any other legal or justifiable reason why the compromise should be approved. We are constrained, therefore, to withhold our approval from the compromise offer. However, as we said before the Act of 1935 provides a method by which taxes may be compromised without the approval of the court, and perhaps a satisfactory settlement may be worked out between petitioner and the several municipalities interested for the taxes for the years 1943, 1944, and 1945.

And now, to wit, March 9, 1946, after hearing and after due and careful consideration, it is ordered, adjudged and decreed that prayer of the petition be and the same hereby is refused.