## Sill *against* M'Knight.

A person found by inquisition to be an habitual drunkard, is not thereby deprived of his power to perform the office of executor or administrator.

ERROR to the Common Pleas of *Bedford* county.

This was an action of ejectment by Samuel H. Bell, trustee of James M'Knight and others, heirs-at-law of Robert M'Knight deceased, against Daniel Sill and Frederick Brown.

James M'Knight, by inquisition found, was declared to be an habitual drunkard, and Samuel H. Bell was appointed his trustee; he was at the time the only surviving executor of his father's estate, and subsequently, as such, under the powers in the will, sold and conveyed the land in question to the defendant, Daniel Sill. The only question in the cause was, whether by the decree he was deprived of his power as executor.

The court below (BLACK, President) decided that he was not, and rendered a judgment for the defendant.

*Mr Russell,* for plaintiff in error, referred to the Acts of 1819 and 1836 on the subject of lunatics and habitual drunkards. 2 *Com. Dig. tit. Chancery* 3; 2 *Vern.* 678, 414; 4 *Com. Dig. tit. Idiot* 347; 4 *Cruise Dig.* 32; 5 *Whart.* 371; 4 *Rawle* 234; 2 *Law Lib.* 336; *Sug. Pow.* 399.

*Mr Barclay,* for defendant in error, argued the Act of Assembly referred to does not affect the capacity of the individual who is the subject of it, but only protects his property from the effects of his contracts; nor is there any necessity that it should affect his official character, for ample provision is made by giving to the Orphans' Court the power to remove executors who have been declared lunatics, or who are mismanaging the estate. *Act of 29th March* 1832, *sec.* 26. 2 *Watts* 175; *Sug. on Pow.* 401; 3 *Higgard's Rep.* 608; 2 *Law Lib.* 276.

The opinion of the Court was delivered by

GIBSON, C. J.—It must be admitted that the Act of 1819 with its amendments, and the Act of 1836 which supplanted it, have in terms put lunatics and habitual drunkards on a level, so far as concerns their own estates; but it must also be admitted that these statutes do not expressly declare a drunkard to be destitute of capacity to perform the office of executor or administrator, and that they create no general disability whatever. A party is found to be a lunatic or drunkard, to enable the court to appoint a

[Sill v. M'Knight.]

guardian of his person, or a curator of his estate; but not to withdraw his faculties further than may be necessary for the particular purpose. The inquisition is no more than *primâ facie* evidence of mental infirmity during the period found; and why should it be conclusive in regard to subsequent acts which it was not intended to control? The court does not adjudge the party to be destitute of legal capacity for every purpose, but only so far as to justify the taking of his property out of his possession and control as a measure of precaution. There is no sentence of general disability in that. The Common Pleas has power to deprive him of capacity to act in relation to his own estate; the power to withdraw his faculties as a guardian, executor or administrator, is committed to the Orphans' Court by a different statute. By the 26th section of the Act of 1832, it is declared that "when any executor, administrator or guardian shall be duly declared a lunatic or an habitual drunkard, it shall be lawful for the Orphans' Court to vacate the letters testamentary or of administration, and to remove such guardian;" a measure that would be unnecessary if the letters were repealed, or the guardian removed by the bare finding of the inquisition. But this proceeding in the Orphans' Court is not the only remedy in a case like the present; for it has long been in the power of a party interested to procure an order of the Orphans' Court that an executor or administrator who is wasting the estate, give security or be dismissed. Thus we see that, though an inquisition in the Common Pleas may be the basis of a proceeding of removal in the Orphans' Court, it has no direct operation on the faculties of the party. The argument on the other side is that it would be incongruous to allow a steward to manage the estate of another after he has been adjudged incapable of managing his own. But the capacity of a party to do one act is not conclusive of his capacity to do another, if his capacity to do the other be triable by a different jurisdiction, whether the two acts make one and the same assurance, and are done at one and the same time, or not. *Shelford on Lunacy* 66. Thus, it was held in *Partridge's Case*, (2 *Salk.* 552), that though the probate of a will is conclusive evidence of the sanity of the testator as to personalty, it is otherwise as to the realty. The incongruity in the present case, if there were any, would be in the statutes, and not in the interpretation of them; but the truth is, there is no incongruity in either. The proceeding in the Orphans' Court is to protect those whose interests have been committed to the drunkard's care; the proceeding in the Common Pleas is to protect him against himself. The friends interested for him in the one case, or the persons interested for themselves in the other, may take the one measure or the other, according to circumstances; and what incongruity is there in allowing them to do so separately? Failing to move in the matter, they leave the acts of the party to their consequences at the common law,

VII. — V *

being good if performed by the lunatic in a lucid interval, or by the drunkard without advantage fraudulently taken of his infirmity. They stand in this respect on a footing with the acts of an insane or a drunken agent under a letter of attorney, which neither court is compelled to repeal by any measure whatever. The system is thus complete; and it prevails also in England, where the disability of a *non compos*, as an executor or an administrator, arises not from the finding of an inquisition in Chancery, but from the act of the spiritual court; and where it occurs, there as here, the proceeding is an independent one, the new administration being sometimes, but not always, granted to the committee appointed by the chancellor. Until, however, the preceding letters have been repealed, acts done pursuant to them are to be judged of according to the general principle of the common law; and why should the operation of our statute be carried further? It matters little that an executor or an administrator is a drunkard, if he manages the business of the estate with discretion and fidelity. The statute has not expressly put him on a level with an idiot; and we have no right to do so by implication. Necessity, which is a principal ground of equitable interpretation, and which does not justify the extension of words to a mischief which rarely happens, has no influence here; for there is no mischief which may not be remedied by the Orphans' Court. On the other hand, a statute which impinges on a common-law right is to be strictly construed. Thus a statute is not to be extended by equity so as to take away trial by jury, or to overthrow an estate, (*Dwarris* 729); and what would more clearly impinge on the rights of the citizen, than to deprive him of his civil capacity at the common law? For these reasons, the power to sell was well executed, in this instance, by the executor, though he had been declared an habitual drunkard.

Judgment affirmed.