## IN RE WEAVER, AN ALLEGED LUNATIC.

CERTIORARI TO THE COURT OF COMMON PLEAS NO. 1 OF PHILADELPHIA COUNTY.

Argued March 23, 1887—Decided May 2, 1887.

1. The testimony taken before an inquest *de lunatico inquirendo* is no part of the record, there being no provision for its reduction to writing, nor for bills of exception to bring it on the record for review.
2. The court of Common Pleas has no power to set aside an inquisition finding the fact of lunacy in a proceeding *de lunatico inquirendo*, upon the ground that the evidence is insufficient to sustain the finding.
3. In proceedings upon a commission *de lunatico inquirendo*, the commissioner has no power to participate in, and his opinion can in no way affect the finding.
4. Where the court of Common Pleas set aside an inquisition finding the fact of lunacy in a proceeding *de lunatico inquirendo* upon the ground that the evidence was insufficient to sustain such finding, it was error to impose the costs of the proceeding upon the petitioner.

Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

No. 249 January Term 1887, Sup. Ct.; court below, No. 749 September Term, 1885, C. P.

This case arose in the court below on a petition filed October 15, 1885, by Samuel H. Warner, for a commission in the nature of a writ *de lunatico inquirendo* to inquire into the alleged lunacy of Dr. Martin Weaver. Mr. Wm. P. Swope, who was first appointed commissioner, having resigned, MR. HAMPTON L. CARSON was appointed in his stead. A jury was summoned, notices given and a number of meetings held, attended by the petitioner, the respondent in person, and by counsel on both sides. The jury by their inquisition found that the respondent had been insane for three years, with lucid intervals; that he was eighty-three years of age, and that a certain deed made by him September 30, 1884, conveying all his estate, was not executed during a lucid interval. The commissioner subjoined a note to the inquisition, that he " did not agree with the conclusions reached by the jury as to the insanity of Dr. Martin Weaver."

The inquisition being returned, on April 22, 1886, the respondent by counsel filed a number of exceptions, three of them relating to irregularities in the conduct of the proceedings before the commissioner, a fourth, that the commissioner, forming a constituent part of the tribunal, had disagreed with the finding as above stated, and a fifth, " because the verdict was against both the evidence and the charge of the commissioner ; " whereupon on motion the court granted a rule upon the petitioner to show cause why the inquisition should not be set aside. On October 27, 1886, on motion of counsel on behalf of the commissioner and stenographer, a rule was granted to show cause why the taxed costs attendant upon the issuance and execution of the commission and due them, should not be paid by the petitioner or the respondent, or among them, as the justice of the case might require, etc.; to which rule the petitioner made answer.

After argument of the exceptions the court below made the following order without opinion : " December 29, 1886, rule absolute, in so far as it relates to the payment of costs. The costs of the proceedings ordered to be paid by the petitioner, Samuel H. Warner. The exceptions to the finding of the jury of inquest dismissed, except those which relate to the insufficiency of the testimony to warrant the finding of the jury ; the exceptions relating to such insufficiency sustained, and the inquisition set aside."

From this order the petitioner took this appeal, assigning the said order as error.

*Mr. F. Carroll Brewster* (*Mr. G. Harry Davis* with him) for the plaintiff in error :

1. The only statute of Pennsylvania directing the manner of proceeding against persons alleged to be lunatics, is the act of June 13, 1836, P. L. 592.

The remedy for the party aggrieved is by traverse provided by the act of May 8, 1874, P. L. 122, as follows : " Every person aggrieved by any inquisition of lunacy . . . . . may traverse the same, and proceed to trial thereon ; "—which remedy must be pursued : act of March 21, 1806, 4 Sm. L. 332.

The court had no power to consider the evidence before the jury of inquest nor to interfere with their finding in this sum-

mary way; Election Cases, 65 Penn. St. 20 ; Barber's App., 1
W. N. 307; In re Kensington and Oxford Turnpike Co., 97
Penn. St. 260 ; Cohn v. Scheuer, 19 W. N. 144.

2. As to the question of costs: The petitioner will not be
charged with costs if he has proceeded in good faith and upon
probable cause: In re Giles, 11 Paige 638; Clark's Case, 22
Penn. St. 466.

Mr. Chief Justice MERCUR : " If the facts found are to be
traversed, it can always be tried by a jury."

Mr. Justice PAXSON : " How did the testimony get with the
court below ? "

Ans.: " It was simply shoved in by the examiner."

*Mr. Richard P. White (Mr. George H. Earle, Jr. and Mr.
Charles C. Lister with him), for the defendant in error :*

1. All the grounds upon which we asked the proceedings in
lunacy to be set aside appear upon the face of the record in
the report of the commissioner.

In lunacy proceedings the Court of Common Pleas acts
simply as a court of Chancery: Hassenplug's App., 106 Penn.
St. 527; Com. v. Roberts, 1 Ch. Co. 24.

The act of 1836, under which this proceeding was had, was
intended to define the method of determining the question of
insanity, the inquest being directed merely to inform the
judges; and until approved, the inquisition has no effect:
Wright's App., 8 Penn. St. 61.

That the act does not mean that these subsidiary inquests
are to coerce the judges to injustice is plain throughout. It
provides, § 8, act of June 13, 1836, P. L. 594, that in certain
cases the inquest can be entirely dispensed with and that a
judge and jury can dispose of the question without its aid. It
is provided, § 2, act April 16, 1849, P. L. 663, that the judges
shall have absolute control of the costs. And finally, § 63, act
of June 13, 1836, P. L. 605, that upon being satisfied of the
sanity of the alleged lunatic, the court can, even after the find-
ing of the inquisition has been approved, commission issued,
and committee appointed, " altogether suspend, supersede and
determine the whole proceedings."

The primary jurisdiction of the court below as a Court of
Chancery in the matter of lunacy, was vested in it by the fifth

article of the constitution of 1794 (re-enacted in the constitution of 1874:) Eckstein's Case, 1 Pars. 59 ; Yaple v. Titus, 41 Penn. St. 202 ; Com. v. Beaumont, 4 Rawle 366 ; Com. v. Roberts, 1 Ch. Co. 24.

The right of traverse existed then as now, and is simply an appeal, after the inquisition is confirmed by the court, to a common law court : In re Mary S. Perrine, 4 Cent. R. 62 ; In re Morgan Hinchman, 4 Clark 184 ; Plank's Case, 5 Clark 35 ; Willis v. Willis, 12 Penn. St. 163 ; Noel v. Harper, 53 Idem 97 ; Com. v. Snyder, 59 Idem 328 ; Haviland's Case, 1 W. N. 345 ; Eckstein's Case, 1 Pars. Eq. 59.

2. As to the question of costs : Hassenplug's App., 106 Penn. St. 527.

*Mr. E. Hunn Hanson*, for the commissioner, filed a brief on the question of costs : citing,

Act of April 16, 1849, § 2, P. L. 663 ; Clark's Case, 22 Penn. St. 466 ; Hassenplug's App., 106 Idem 527 ; Appeal of St. Joseph's Orphan Asylum, 38 Idem 535.

OPINION, MR. JUSTICE GREEN :

It is perhaps singular that there is such a dearth of authority upon the question whether it is within the power of the Court of Common Pleas to set aside an inquisition of lunacy, finding the fact of lunacy in a proceeding *de lunatico inquirendo*, upon the ground that the evidence is insufficient to sustain the finding. We have not been referred to a single case by the counsel on either side, in which this direct question has been either considered or decided.

In Pennsylvania the absence of authority is doubtless due to the fact that the uniform practice has been to contest the finding of the inquest upon the merits, by means of a traverse, as is provided by our acts of Assembly. But in England where, since the statute of George IV., the allowance of a traverse depends upon the grace of the chancellor, one might expect to discover a well-defined practice upon this subject. Such a cursory resort to the English books as has been within the writer's limited opportunity, however, has failed to disclose a practice consistent with the action of the court below in setting aside the present inquisition. But in any event the question must be settled by a reading of our own statutes.

The right to traverse an inquest of lunacy has doubtless always existed in Pennsylvania. It was recognized in Beaumont's Case, 4 R. 366, decided in 1834, wherein it was held that a *certiorari* and not a writ of error was required in order to remove the record where the inquisition was quashed upon exceptions filed. At the close of the opinion, GIBSON, C. J., said the proceedings "would seem to be revisable by writ of error after pleading to issue on a traverse of the inquisition."

The act of 1836 gives the right of traverse in substantially the same language as the act of 1874, but the right doubtless came originally from the English practice in chancery in lunacy cases. In looking for the origin of the right there I find that in Shelford on Lunacy, p. 114, the subject is thus presented: "By the statute of 2d and 3d Edw. VI. c. 8, § 6, it is provided that if any person shall be untruly found lunatic or idiot every person and persons aggrieved by such office or inquisition shall and may have his or their traverse to the same immediately or after, at his or their pleasure, and proceed to trial therein and have like remedy and advantage as in other cases of traverse upon untrue inquisitions or offices found." Although this language is more than three hundred years old it is almost identical with that which is employed in our own acts, and indicates the source from which our legislation was derived. The writer (Shelford) proceeds to show that by statute of George IV. c. 53, the person desiring to traverse must present his petition to the chancellor, and obtain leave to traverse. Although the traverse under the statute of George would seem to depend upon the grace of the chancellor, the authorities show that it was rarely withheld and was so far regarded as a matter of right as to be always granted unless some very special and peculiar reason existed for denying it.

Of course, under our own statutes it has always been a matter of right. The words of our present law, act of 8th May, 1874, P. L. 122, are "every person aggrieved by any inquisition of lunacy or habitual drunkenness may traverse the same upon or after the return of the same, and proceed to trial thereon and have like remedy and advantage as in other cases of traverse upon untrue inquisitions found." Of course, it must be conceded that it was intended by this law to give a

remedy for an untrue inquisition found. That is, a right to contest the correctness of the finding of the inquest of the various matters of fact enumerated in the commission, is conferred upon any party aggrieved by the inquisition. The exercise of the right to traverse is by means of a jury trial, and the person aggrieved may have a jury trial upon the facts found by the inquest. If now the court may set aside the inquisition because it does not agree to the conclusions of fact returned by the inquest, the right to have those facts tried by a jury is taken away at least from the party in whose favor the inquisition has been returned. If the court may thus dispose of one case it may dispose in the same way of all inquisitions that may come before it. In other words, the power to review the inquest's findings of fact may be entirely exercised by the court to the exclusion of a jury trial upon a traverse. Of course this cannot be. It is enough to know that no such power is given by the law to the courts, and it is, in our judgment, quite conclusive of the subject to know that the special remedy for this very purpose is given in express terms, by means of a jury trial upon a traverse. The act of 21st March, 1806, which has been so many times appealed to in cases of questionable remedies, is entirely in point. That act directs that "in all cases where a remedy is provided or duty enjoined or anything directed to be done by any act or acts of Assembly of this commonwealth, the directions of said acts shall be strictly pursued."

Nor is it at all necessary to hold consistently with this view that there is no power of supervision residing in the court over the proceedings of the inquest, in the exercise of which the inquisition may be set aside. It cannot be doubted that if there are objections to the regularity or validity of the proceedings, such as the appointment of improper persons as commissioners or jurors upon the inquest, or misbehavior in office by these functionaries; or if the formalities required by law have been disregarded; or if the alleged lunatic is not within the jurisdiction of the court, for these and other like causes doubtless the court may interfere, and if necessary set aside the inquest. But that is a very different kind of authority from the power to review the facts found by the inquest and determine them upon the merits, as those merits appear to the court. That

kind of authority is not conferred by any law and, therefore, we cannot hold it to exist. The form of the commission is prescribed by the third section of the act of 1836, and it distinctly requires that the commissioners shall " diligently inquire by the oaths or affirmations of six good and lawful men of the county of ————— by whom the truth of the matter may be better known whether the said ————— is a lunatic or not." This gives the whole power to the jurors sitting upon the inquest to determine the fact of lunacy; and while the commissioner may differ in opinion upon the facts in question from the jury, he has no power to participate in the finding, and hence his opinion can in no manner control the finding of the inquest. And so we apprehend as to the further proceedings to impeach the findings of the inquest upon the controverted facts; they must consist of a traverse and a jury trial. To allow the court to review the testimony taken before the inquest and decide upon its merits, is practically to supersede the traverse which is the remedy provided by the law. Nor do we understand how the court can have access to the testimony in order to review it. It is no part of the record and there is no provision for its return by the inquest or by the commissioner. The inquisition must be returned because the commission so directs, but not so as to the testimony. There is no provision for its reduction to writing, nor for bills of exception to bring it on the record. Moreover, if the court has power to examine and decide upon it finally, this court necessarily has power to review the action of the court below, but has no means of exercising that power, because the testimony cannot be brought before us for want of a bill of exceptions. Upon every view of the subject we are of opinion that the learned court below was in error in making absolute the rule to set aside the inquisition.

On the question of costs we infer they were imposed upon the petitioner because the inquisition was set aside. As we have decided to reverse that order and re-instate the inquisition that reason no longer exists. We have not been referred to any case in which costs have been imposed upon the petitioner after inquisition returned finding the party a lunatic and before final decree. In Clark's Case, 22 Penn. St. 466, the costs were imposed upon the estate of the lunatic after in-

quisition found against him, and it was held to be within the power of the court. But in the same case we said " where it is found by inquisition that the party with respect to whom the application was made is not a lunatic, and there is a certificate from the judge holding the inquisition that ' there was not probable cause for the application,' the party who instituted the proceeding is liable for the costs." This was under the act of 1836. The act of 1849 gives general power to the court to decree who shall pay the costs, or to apportion them among the parties; but we think when the inquisition has found the fact of lunacy, and thus justified the proceeding, it would be a severe measure of justice to impose all the costs upon the petitioner pending the proceedings, unless there was some special and sufficient reason appearing in the record in support of such an order. We see no reason of that kind upon the present record and we therefore reverse the order imposing the costs upon the petitioner.

.The order making absolute the rule to set aside the inquisition is reversed and the inquisition is re-instated and record remitted for further proceedings; the order directing the payment of the costs by the petitioner, Samuel H. Warner, is also reversed.