## Pottash et al., Appellants, v. Albany Oil Co.

*Bills of lading—Foreign attachment—Appearance—Quashing attachment—Act of June 9, 1911, P. L. 838—Parties—Trial by jury —Constitutional guaranty—Contract—Damages — Measure — Injunction.*

1. Service of an attachment upon the holder of a negotiable bill of lading is not sufficient compliance with section 24 of the Bills of Lading Act of June 9, 1911, P. L. 838.

2. The requirements of that section cannot be complied with, except by obtaining an injunction preventing the further negotiation of the bill. Not decided at what stage of the proceedings this is required.

3. The effect of an attachment is only to warn the garnishee that thereafter he must pay nothing to the defendant in the writ, under penalty of possibly being required to make payment to plaintiff.

4. A garnishee will not to be held liable to the plaintiff, because, after service of an attachment, he returns to the real owner a negotiable instrument sent for collection but never in fact collected.

5. The holder of a bill of lading, the alleged owner of it, the consignee of the goods and the carrier, are necessary parties to a bill in equity to prevent its negotiation.

6. The Constitution does not guarantee trial by jury in regard to matters purely within the jurisdiction of chancery, or where new remedies are provided by statute.

7. The measure of damages for a failure to deliver goods of the quality contracted for, must be ascertained as of the time and place of delivery provided by the contract.

8. The entry of an appearance by a garnishee does not debar him from taking a rule to show cause of action and why the attachment should not be dissolved, nor from having it made absolute if the affidavit of cause of action is insufficient.

9. After a defendant enters an appearance to a writ of foreign attachment, the writ cannot be quashed; the case thereafter proceeds as in actions commenced by summons.

10. Sloan Corporation v. Linton, 260 Pa. 569; Schober v. Mather, 49 Pa. 21, and Black v. Brown, 15 Pa. Dist. R. 192, distinguished.

Argued April 25, 1922. Appeal, No. 351, Jan. T., 1922, by plaintiffs, from order of C. P. No. 3, Phila. Co., Dec. T., 1921, No. 376, making absolute rule to dissolve

foreign attachment, etc., in case of Edward Pottash and Abraham Schneyer, copartners, trading as Philadelphia Cotton Co. v. Albany Oil Co.   Before MOSCHZISKER, C. J., WALLING, SIMPSON, SADLER and SCHAFFER, JJ.   Affirmed.

Rule to quash attachment, and rule to show cause of action and to dissolve foreign attachment.   Before FERGUSON, J.

The opinion of the Supreme Court states the facts.

Rules absolute.   Plaintiffs appealed.

*Errors assigned* were above orders, quoting record.

*B. D. Oliensis,* with him *Francis Shunk Brown,* for appellants, cited; Kiefer v. Ehler, 18 Pa. 388; Bell v. Mailing Co., 10 Pa. Superior Ct. 38; Com. v. De Camp, 177 Pa. 112; Jackson v. R. R., 228 Pa. 566; Pottash v. Bag Co., 267 Pa. 96; Shriver v. Harbaugh, 37 Pa. 399; Schober v. Mather, 49 Pa. 21.

*Charles Myers,* with him *Sharswood Brinton,* and *Gill, Guckes & Shrader,* for carriers, appellees, cited: Stamford R. M. Co. v. R. R., 257 Pa. 507; Penna. R. R. v. Pennock, 51 Pa. 244; Shriver v. Harbaugh, 37 Pa. 399; Dornin v. McCandless, 146 Pa. 344.

*James McMullan,* with him *Dickson, Beitler & McCouch,* for the Fourth Street National Bank, appellee.

OPINION BY MR. JUSTICE SIMPSON, May 15, 1922:

Plaintiffs issued a foreign attachment under which the sheriff seized several carloads of goods, being transported by the Pennsylvania Railroad Company under a negotiable bill of lading which was in the possession of the Fourth Street National Bank.   The railroad and the bank were both served with copies of the attachment, and

duly appeared to the action. Plaintiffs' claim is that the bank holds the bill for defendant.

The railroad company entered a rule to show cause why the attachment should not be quashed, because plaintiffs had not complied with section 24 of the Bills of Lading Act of June 9, 1911, P. L. 838; the court made the rule absolute and quashed the attachment. The bank entered a rule upon plaintiffs to show cause of action and why the attachment should not be dissolved; an affidavit was filed which was held inadequate; this rule also was made absolute and the attachment dissolved. Plaintiffs thereupon appealed, assigning these rulings as error. The affirmance of either of them would necessarily end the present controversy; but, at the request of counsel, we will consider both points, to the end that there may be established a precedent for the guidance of other parties in similar proceedings.

The Uniform Bills of Lading Act of June 9, 1911, P. L. 838, provides as follows:

"Sect. 24. If goods are delivered to a carrier by the owner......and a negotiable bill is issued for them, they cannot thereafter, while in the possession of the carrier, be attached by garnishment or otherwise, or be levied upon under an execution, unless the bill be first surrendered to the carrier or its negotiation enjoined. The carrier shall in no such case be compelled to deliver the actual possession of the goods until the bill is surrendered to him or impounded by the court.

"Sect. 25. A creditor whose debtor is the owner of a negotiable bill shall be entitled to such aid from courts of appropriate jurisdiction, by injunction and otherwise, in attaching such bill or in satisfying the claim by means thereof, as is allowed at law or in equity in regard to property which cannot readily be attached or levied upon by ordinary legal process."

It is admitted that the bill of lading was not surrendered to the railroad company, and that no injunction was applied for; but plaintiffs claim that by serving

the attachment upon the bank, it was "enjoined" from further negotiating the bill. This is not a correct statement of the effect of an attachment, and, moreover, does not answer the requirements of the statute. As already pointed out, section 24 forbids the attachment "unless the bill be first surrendered to the carrier or its negotiation enjoined"; these words are not doubtful in meaning. In Patton v. Marr, 44 N. C. 377, 379, it is correctly said, "Whenever the word 'enjoin' is used in legal proceedings, it must be understood that further proceedings [are to be] ...... stayed by order of a court of equity." The application of this rule to the present case is rendered doubly clear, not only by the use of the word "injunction" in section 25; but by the further fact that the carrier cannot be "compelled to deliver the actual possession of the goods until the bill is surrendered to him or impounded by the court," there being no method known to the law by which the holder of a bill of lading can be compelled to deliver it to the court for impounding, save only by a bill in equity or proceedings in the nature thereof. Neither this nor any other statute contemplates a substitute in cases of this character, but only the time-honored method in equity; doubtless the courts could devise a means, if necessary to effectuate justice, but to do so under these circumstances would only establish a method less flexible and more cumbersome than a bill in equity, requiring every essential step to be taken as provided for chancery proceedings.

It was admitted at bar that if a negotiable promissory note was attached, the creditor would have to serve the process upon the payee, as the real debtor, and by proceedings in equity enjoin its further negotiation. This well known if not universal method, is the basis of the statutory proceeding for attaching negotiable bills of lading; with the further necessity, in this latter case, for protecting the carrier, who is an additional party in interest. If the foregoing sections of the statute are properly construed they successfully accomplish their in-

tended purpose. If we assume,—though we do not decide,—that the goods take the place of the debtor, despite the consignee's right to have them upon payment of the bill (Gurdus, to use of Solnicki v. Phila. National Bank, 273 Pa. 110) still plaintiffs have not sustained their contention. Unlike replevin, an attachment does not take the paper (which represents the owner's right against the payee or the goods, or both), but only warns the person served with process that thereafter he must pay nothing to the defendant in the writ, under penalty of making good such sum out of his own estate; and, hence, if the garnishee has no money of defendant, and subsequently receives none, he incurs no liability. If, as plaintiffs allege (and upon no other theory can they sustain their attachment), the bank is not the owner of the bill, but only the collecting agent of defendant,—a situation frequently arising in matters of this kind,— then there is nothing in the attachment to prevent it from returning the bill to defendant, and the latter from selling it to some innocent third party. This is one of the possibilities intended to be and which in fact is provided against by the above quoted sections of the statute, and wholly defeats the argument made to sustain this appeal.

In the present instance, if plaintiffs had followed the clear provisions of the statute, instead of trying to find a substitute for them, a bill in equity would have been filed against the bank as holder of the bill of lading, the defendant as the alleged owner of it, the consignee of the goods as the one entitled to receive them on payment of the bill and its receipt and surrender to the railroad, and the latter as the party in possession of the goods, required to deliver them on surrender of the bill. To the legal mind it is evident that the rights of all these parties may be easily protected through the flexible machinery of a court of equity; it is certain they cannot be unless in substance this course is pursued.

It is said, however, that if a bill in equity is filed, the court, having obtained jurisdiction of the parties and

subject-matter would proceed to round out the whole circle of controversy (McGowin v. Remington, 12 Pa. 56, 63; Hurst v. Brennen, 239 Pa. 216, 223); and thus plaintiffs would be deprived of their constitutional right of trial by jury. They never had such right, however, in matters purely within the jurisdiction of chancery, or where, as here, new remedies are provided; and hence the constitutional provision that "trial by jury shall be as heretofore" has no applicability, for the "heretofore" never existed: Van Swartow v. Commonwealth, 24 Pa. 131, 134; Byers v. Commonwealth, 42 Pa. 89; School District of Borough of Duquesne v. Pitts., 184 Pa. 156. Pennsylvania courts, from the earliest days, have wisely gone far in permitting equitable claims to be made and equitable defenses to be interposed in proceedings at law; but they have never undertaken to limit the right of the legislature to provide, as it has done wisely by the sections of the statute under consideration, that a new remedy, purely equitable in its nature, shall be enforced only in equity, and this the present proceeding certainly is, so far as enjoining negotiation is concerned.

It is further urged by plaintiffs, however, that, if the railroad's construction be correct, viz, that the bill must be "first surrendered to the carrier or its negotiation [first] enjoined," by the time notice is given and an injunction obtained, the goods will be beyond the jurisdiction of the court. Without definitely deciding the point, since the only question raised on this record is whether or not an injunction is required at some stage of the proceedings, and not overlooking the fact that, if the true construction requires an injunction to be obtained, the matter is one for the legislature and not for us, we may nevertheless point out that there is but one "first" in the printed clause; and hence it may possibly be satisfied by an injunction after attachment of the goods, provided it is promptly applied for and obtained (as specified in the next sentence) before the carrier is "compelled to deliver the actual possession of the goods," when either

the bill must be "surrendered to him or impounded by the court."

It is clear, therefore, the attachment was properly dissolved on the application of the railroad.

Upon the rule to show cause of action, the affidavit alleged that plaintiffs and defendant entered into a contract for the purchase and sale of certain goods "f. o. b. cars Albany, Georgia"; that at plaintiffs' request they were shipped in three separate parcels, one to Washington, D. C., one to Philadelphia, Penna., and one to Montreal, Canada; that the contract price was paid, but on the arrival of the goods they were found defective in quality; and plaintiffs claimed to recover the difference between the value of the goods as contracted for and as in their actual condition, at said points of destination. The affidavit did not state anything regarding their value at Albany, Georgia. The measure of damages thus claimed is, of course, an improper one; sect. 69, of the Uniform Sales Act of May 19, 1915, P. L. 543, 562, expressly provides that "such loss, in the absence of special circumstances showing proximate damage of a greater amount, [none being averred here] is the difference between the value of the goods at the time of delivery to the buyer [here f. o. b. cars, Albany, Georgia] and the value they would have had if they had answered to the warranty." If appellants' contention on this point is correct, then they could have directed shipment to Petrograd, or some other demoralized or inaccessible place, and charged the seller accordingly; and so appellants counsel, with some hesitancy, admitted.

Plaintiffs contend, however, that in Sloan Corporation v. Linton, 260 Pa. 569, we held the market price at the place of destination of the goods was the determinative factor. This, however, is not correct. In that case it appeared that all over the country the market price, of the kind of goods there shipped, was determined by deducting, from the market price in New York, the cost of transportation to that city. Plaintiff proved what the

market price in New York was, and what the cost of transportation was; the difference was correctly held to be the market price at the place of delivery, and it was this latter which was alone considered. Appellants quote from 35 Cyc. 368, that "If the place of delivery and place of destination, are different, the market price at the destination, less the cost of transportation, may be resorted to." When read in connection with the balance of the paragraph, it will be found this supposed rule only applies where "there is no market price at the place of delivery." No such averment appears in the present affidavit; if it did we might be called upon to decide whether or not the nearest available market to the place of delivery (Barber Milling Co., v. Leichthammer Baking Co., 273 Pa. 90), should not be substituted; but it is not necessary to do so here.

Appellants finally urge that the entry of an appearance for the garnishee prevents the raising of this question. This also is incorrect. In Schober v. Mather, 49 Pa. 21, relied upon to sustain this contention, the garnishee entered an appearance and then moved to quash the writ, because it was made returnable at the wrong return day. Being in court by his general appearance he could not object to the return day of the process which brought him there, it being a matter of indifference how he got there. But this did not affect his right, and does not here, to take any proceedings which one in court could properly take. Nor is the decision of our Brother WALLING (when in the court of common pleas), in the case of Black v. Brown, 15 Pa. District Reports 192, of any help to appellants. There defendant entered an appearance and it was properly held that, by the express language of the statute, the case should proceed as in actions commenced by summons, and for that reason the writ could not be quashed: Bergman v. Straus, 264 Pa. 439.

We conclude, therefore, that the attachment was properly dissolved, since the affidavit did not set forth a cause

of action against the defendant: McLeod v. Hyman, 272 Pa. 582. Non constat but that at Albany, Georgia, the place of delivery, the value of the goods actually shipped was equal to the value of those contracted for.

The orders of the court below are affirmed.