Watson Appeal.

Argued April 1, 1954. Before STERN, C. J., STEARNE, JONES, BELL, MUSMANNO and ARNOLD, JJ.

496

*John A. Metz, Jr.*, with him *Maurice L. Kessler* and *Metz & Metz*, for appellant.

*Elder W. Marshall*, with him *Noel A. Calhoun* and *Reed, Smith, Shaw & McClay*, for appellee.

OPINION BY MR. JUSTICE JONES, May 24, 1954:

Catherine L. Watson, the appellant, was employed for a number of years by the School District of the City of McKeesport as a teacher under a statutorily prescribed written contract. The employment endured until August, 1949, when the local School Superintendent notified her that she was suspended indefinitely. When Miss Watson applied for reinstatement, the School Board charged that she was suffering mental derangement and assigned the condition as a basis for her dismissal as a teacher. The Board held several hearings on the alleged incompetency at which Miss Watson asserted that the Public School Code of 1949, P. L. 30, unconstitutionally deprived her of a jury trial on the issue of her mental condition. The Board sustained the charge of mental derangement and, in March 1950, dismissed her.

Upon appeal by Miss Watson, the Superintendent of Public Instruction sustained the action of the

Board. She then appealed to the court below where a hearing *de novo* was held. The court found from the evidence that the appellant suffered from olfactory hallucinations coupled with paranoid delusions and concluded that the appellant was mentally deranged within the intendment of Section 1122 of the Public School Code of 1949, P. L. 30, 24 PS § 11-1122. Section 1122 specifies, inter alia, that "mental derangement" on the part of a teacher is a valid basis for terminating a contract of professional employment. The court accordingly entered an order sustaining the decision of the Superintendent of Public Instruction that the appellant's contract of employment as a school teacher was validly terminated by the Board of Directors of the School District.

The appellant cannot successfully maintain that the evidence adduced in the court below was insufficient to support the findings of the learned hearing judge. His detailed and pertinent findings from substantial evidence leave no doubt that the appellant was, in fact, mentally deranged. It is unnecessary, therefore, to consider at length the first question posed by the appellant as to whether the facts, as found by the court below, establish a case of mental derangement within the meaning of Section 1122 of the Public School Code of 1949. In interpreting the term "mental derangement", which the Code does not define, the words are to be accorded their common and ordinary meaning: Section 33 of the Statutory Construction Act of 1937, P. L. 1019, 46 PS § 533. "Deranged", from which the cognate noun derives, is authoritatively defined as "Disordered; esp. disordered in mind; crazy, insane": Webster's New International Dictionary (2nd Ed.). And, such is the meaning the learned court below properly ascribed to "mental derangement", as used in the Code, when it said that the term "means *a*

*mental disorder or temporary or permanent confusion of a disturbed mind,* or insanity . . . ."

The appellant's principal contention, which her counsel earnestly urges upon us, is that the Public School Code of 1949 unconstitutionally deprived her of the right to a trial by jury on the issue of mental derangement since such right existed in Pennsylvania prior to the adoption of the Constitution of 1874 and is, therefore, vouchsafed to her by Article I, Section 6, of the Constitution which provides that "Trial by jury shall be as heretofore, and the right thereof remain inviolate." The fallacy in this argument is that no statute, enacted prior to the Constitution of 1874, entitled a teacher, when discharged for mental derangement, to a trial of the issue by a jury. The fact is that "mental derangement" as a basis for a teacher's discharge appeared for the first time in Section 2 of the Act of April 6, 1937, P. L. 213 (popularly known as the Teachers' Tenure Act), which, as an amendment of the School Code of 1911, conferred for the first time rights of tenure upon professional employees. Before the enactment of the tenure provisions contained in the amendatory Act of 1937, it had been held that "by the fact of his employment the teacher submitted himself to the jurisdiction of the board, upon any charge of incompetency, cruelty, negligence, or immorality, which might be preferred against him; and that the action of the board, if it be properly entered upon the minutes in the form and manner required by the statute, in case of a dismissal is conclusive, unless the board can be shown to have acted corruptly or in bad faith, or to have clearly abused its powers": *McCrea v. Pine Tp. School Dist.,* 145 Pa. 550, 557, 22 A. 1040.

Section 2 of the Act of 1937, supra, enumerated the "only valid causes for termination of a contract"

(mental derangement being one of them) ; it directed that, prior to dismissal, a teacher should be presented with a detailed written copy of the charges against him and given a hearing thereon; it provided for an appeal from an adverse decision of the board to the court of common pleas with a hearing *de novo;* and it authorized the court to "make whatever order it considers just." This procedure was carried forward substantially by the Public School Code of 1949 (Section 1122 et seq., 24 PS § 11-1122 et seq.), but the Code added (Section 1131, 24 PS § 11-1131) a right of intermediate appeal by a discharged teacher to the Superintendent of Public Instruction. Neither statute, however, required that an appeal to the court be tried to a jury. Nor is it constitutionally essential that either Act should have done so, for, by both, the rights of teachers were enlarged and not diminished; in short, the statutes conferred upon teachers rights which the common law had not accorded them. The failure to include a provision for a further right (viz., trial by jury of an issue of mental derangement) does not render the procedure unconstitutional: see *Premier Cereal & Beverage Co. v. Pennsylvania Alcohol Permit Board,* 292 Pa. 127, 132-133, 140 A. 858; and *School District of the Borough of Duquesne v. Pitts et al.,* 184 Pa. 156, 160, 39 A. 64. Certain it is that the constitutional mandate that "trial by jury shall be as heretofore" has no applicability when the right did not exist "heretofore": see *Pottash v. Albany Oil Co.,* 274 Pa. 384, 389, 118 A. 317.

In support of the contention that a teacher discharged because of mental derangement has a right to trial by jury of the issue, the appellant's counsel points to the Act of June 13, 1836, P. L. 589 [1] which author-

---

[1] Repealed by Section 801 (a) (1) of the Incompetents' Estates Act of 1951, P. L. 612, 50 PS §627 et seq.

ized courts of common pleas to inquire into the lunacy of any person and to have the issue tried to a jury. The argument obviously overlooks the limited purpose of the Act of 1836 which was the protection of the person and property of a mental incompetent. See *In re Rust,* 177 Pa. 340, 343, 35 A. 623; *Imhoff v. Witmer's Administrator,* 31 Pa. 243, 244; and *Sill v. M'Knight,* 7 W. & S. 244, 244-245. What the Act of 1836 did was to authorize courts of common pleas to determine, upon application of "a relation by blood or marriage" or "a person interested in his estate", the lunacy or habitual drunkenness of any person by the appointment of a commission to try the issue before a panel of not less than six nor more than twelve jurors and to permit any person aggrieved by a finding of the commission to appeal to the court of common pleas where such finding could be traversed before a jury. See Act of May 8, 1874, P. L. 122,[2] and *In re Weaver,* 116 Pa. 225, 229-231, 9 A. 323.

The Act of 1836 in no way purported to insure the tenure of a teacher dismissed because of "mental derangement" until an issue of lunacy was determined by a jury. Under that Act, a determination of lunacy was no more a "sentence of general disability" (*Sill v. M'Knight,* supra, at p. 245) than is a determination of mental derangement under the School Code of 1949 for the purpose of terminating a teacher's contract. In *Sill v. M'Knight,* supra, an executor had been found, under the procedure prescribed by the Act of 1836, to be an habitual drunkard and, as a consequence, was deprived of control of his own estate. It was held that this circumstance did not automatically deprive him of his control over another's estate. Mr.

---

[2] Repealed by Section 801 (a) (7) of the Incompetents' Estates' Act of 1951, P. L. 612, 50 PS §§708-762.

Chief Justice Gibson, speaking for this court, said at p. 245,—"The court does not adjudge the party to be destitute of legal capacity for every purpose, but only so far as to justify the taking of his property out of his possession and control as a measure of precaution."

In *Imhoff v. Witmer's Administrator*, supra, where a person was adjudged to be an habitual drunkard and, accordingly, was held to be incompetent thenceforth to enter into a contract which would bind his estate, this court, after noting that the Act of 1836 placed lunatics and habitual drunkards "on precisely the same footing", declared that "The object of the statute was protection and guardianship over the persons and estates of parties wanting capacity to take proper care of either, and to preserve the property of such from being squandered, or improvidently used to their own injury and that of their families, if they have any." Again, in *In re Rust*, supra, it was recognized at p. 343 that "While one of the objects of [the Act of 1836] is to provide guardianship for the person of the lunatic, its principal purpose is to protect his estate . . . ."

If further confirmation were needed, that the purpose of the Act of 1836 was the safeguarding of an incompetent's estate against his own improvident acts or folly, it could be had in the restriction on the class of persons authorized by the statute to apply for the appointment of a lunacy commission, namely, "a relation by blood or marriage" or "a person interested in his estate".

Plainly, therefore, the Act of 1836, being concerned exclusively with the persons and estates of incompetents, has no pertinency in a proceeding to determine whether a teacher is mentally deranged so as to be

subject to dismissal under the Public School Code of 1949.

The appellant's contention is not aided by a reference to the Act of May 28, 1907, P. L. 292.[3] That Act, aside from having been enacted after the adoption of the Constitution of 1874, was likewise intended to preserve the estates of incompetents. Nor does the Act of 1907 assume any greater relevance to the question here involved by reason of the fact that the legislature, in enacting the Incompetents' Estates Act of 1951, P. L. 612, 50 PS § 1631 et seq., expressly saved from repeal the provision of the Act of 1907 which authorized a jury trial.

Since appellant's counsel has failed to show any prior right in a teacher, dismissed because of mental derangement, to a jury trial of the charge, it follows that the Public School Code of 1949 has not deprived appellant of any constitutional right in respect of her dismissal.

The order is affirmed at the costs of the appellee School District.

---

[3] Section 801 (a) (14) of the Incompetents' Estates Act of 1951, P. L. 612 (50 PS §§941-943, 945-994), expressly repealed the Act of 1907, P. L. 292, except for Section 4 thereof, 50 PS §944.