In Re: Albert C. Friedman.

Albert C. Friedman, Petitioner.

Argued January 31, 1983, before Judges Rogers, Williams, Jr. and Craig, sitting as a panel of three.

*Wilbur Greenberg*, with him *Jonathan T. Warren*, of counsel: *Sidkoff, Pincus, Greenberg & Green, P.C.*, for petitioner.

*Hannah Leavitt*, Assistant Counsel, with her *Anthony A. Geyelin*, Chief Counsel, for respondent, Insurance Department of the Commonwealth of Pennsylvania.

Opinion by Judge Craig, February 23, 1983:

Albert C. Friedman appeals from an order of the Commissioner of the Pennsylvania Department of Insurance revoking his agent's license and ordering him to pay a $1,000 penalty to the Commonwealth. We affirm.

276

The facts are not in dispute. On May 15, 1980, the United States District Court for the Eastern District of Pennsylvania found Mr. Friedman guilty of conspiracy and interstate transportation of stolen property under Title 18 of the United States Code; the grand jury indictment of record indicates that Mr. Friedman and his co-conspirator transferred the life insurance policies of their clients from one company to another and, in the process, generated refund checks which Mr. Friedman converted to his own use. The court sentenced him to three years in jail, suspended all but ten days of that sentence, and fined him $10,000.

On September 19, 1980, the department issued an order to show cause, alleging violations of sections 603[1] and 639[2] of the Insurance Department Act of 1921, Act of May 17, 1921, P.L. 789, *as amended*, 40 P.S.

---

[1] Section 603 of the Act, 40 P.S. §233, provides in pertinent part:

(a) The Insurance Commissioner may issue, upon certification as aforesaid by any company, association, or exchange, authorized by law to transact business within this Commonwealth, an agent's license to any person of at least eighteen years of age. . . . Before any such license is granted, the applicant shall first make answer, in writing and under oath, to interrogatories on forms and supplements such as the Insurance Commissioner shall prepare and submit, which answers shall be vouched for by indorsement of the company, association, or exchange interested, and to the effect that the applicant is of good business reputation. . . . When the Insurance Commissioner is satisfied that the applicant is worthy of license, and that he is reasonably familiar with provisions of the insurance law of this Commonwealth, he shall issue a license. . . .

[2] Section 639 of the Act, 40 P.S. §279, provides in pertinent part:

Upon . . . satisfactory evidence of such conduct as would disqualify such agent . . . from initial issuance of a license under sections six hundred three [40 P.S. §233], . . . the Insurance Commissioner may in his discretion, pursue any one or more of the following courses of action . . . :

(1) Suspend or revoke or refuse to renew the license of such offending party or parties;

§§233 and 279 (the Act) and sections 33.7,[3] 33.18,[4] and 33.21[5] of Title 31 of the Pennsylvania Code (the regulations). These provisions give the commissioner discretion to impose various sanctions upon an agent who engages in conduct that would disqualify him from the initial issuance of a license.

(2) Impose a civil penalty of not more than one thousand dollars for each and every act in violation of any of said sections by said party or parties.

[3] 31 Pa. Code §33.7(b) provides in pertinent part:

(b) A showing that, within five years prior to making application for an agent's or broker's license, an applicant has pleaded guilty, entered a plea of *nolo contendere*, or has been found guilty in a court of competent jurisdiction of criminal conduct which clearly reflects on the honesty and integrity of the applicant, shall be evidence of lack of fitness for licensure.

. . . .

(2) Examples of criminal violations which the Department will interpret as reflecting upon the honesty and integrity of applicants are unlawful advertising of insurance business, unlawful coercion in contracting insurance, furnishing free insurance as an inducement for purchases, unlawful collection agency practices, forgery or fraudulent practices, embezzlement, obtaining money under false pretenses, conspiracy to defraud, bribery or corrupt influence, perjury or false swearing, and any felony of the third degree or higher as graded in this Commonwealth.

[4] 31 Pa. Code §33.18 provides in pertinent part:

(a) The Department may revoke, suspend, or refuse to renew the license of any agent or broker upon finding, after a hearing, that such agent or broker has engaged in conduct which would disqualify him from initial issuance of a license. Such conduct includes the indicated bases for initial denial of a license provided in §33.7 of this title (relating to standards for license issuance).

[5] 31 Pa. Code §33.21 provides in pertinent part:

(a) The Department may issue, upon receiving certification by any insurance company authorized by law to transact business within this Commonwealth, an agent's license to any person, copartnership, or corporation who meets the appropriate requirements of this chapter.

With the fact of his conviction established by pre-hearing agreement between counsel, neither Mr. Friedman nor his attorney chose to attend the license-revocation proceeding. The only defense which he raised before the department appeared in his brief; there, he argued for a stay of the commissioner's hand until the United States Court of Appeals for the Third Circuit decided his appeal.

The commissioner rejected that argument and, on August 18, 1981, issued his revocation order.

On appeal, Mr. Friedman contends that the department (1) violated his constitutional guarantee against double jeopardy by fining him under the Act after the federal court had already imposed a $10,000 criminal penalty; (2) denied him a right to trial by jury under article I, section 6 of the Pennsylvania Constitution, and (3) did not provide him with a meaningful opportunity to be heard.

As a preliminary matter, the department contends that Mr. Friedman is primarily challenging the constitutionality of the Act's implementing regulations and that he is doing so for the first time on appeal. Thus, the department argues that under *Tancredi v. State Board of Pharmacy,* 54 Pa. Commonwealth Ct. 394, 421 A.2d 507 (1980), interpreting the Administrative Agency Law, 2 Pa. C. S. §703(a), Mr. Friedman has waived his right to be heard. We disagree.

Section 703(a) provides that a party proceeding before a Commonwealth agency may question the va-

(b) Before any such license is granted the applicant shall first answer, in writing and under oath, interrogatories on forms and supplements which the Department will prepare and submit. Such answers shall be vouched for by endorsement of the company, association, or exchange interested and to the effect that the applicant is of good business reputation, of experience in underwriting other than soliciting, and is worthy of a license.

lidity of a statute on appeal even though he did not challenge the statute below; however, unless a party obtains court permission, he may not raise other questions on appeal which he failed to raise before the agency. In *Tancredi,* we held that the statutory validity exception to section 703's waiver rule did not extend to unchallenged Pharmacy Act[6] regulations. 54 Pa. Commonwealth Ct. at 403, 421 A.2d at 511. As bases for that holding, we noted the clear language of section 703, which applies only to statutes, and practical considerations in *Tancredi* militating against extension of the waiver exception to pharmacy regulations.[7]

Those practical considerations are not present here. Moreover, we note that, unlike the pharmacists in *Tancredi* who challenged the regulations but not an almost identical statutory provision, Mr. Friedman has challenged the Act and the regulations in tandem. *Cf. Fumo v. Insurance Department,* 58 Pa. Commonwealth Ct. 392, 427 A.2d 1259 (1981) (imprecise but not unconstitutionally vague statutory language vests insurance commissioner with broad discretion to establish precise criteria for license revocations through promulgation of regulations).

---

[6] Act of September 27, 1961, P.L. 1700, *as amended,* 63 P.S. §§390-1—390-13.

[7] In *Tancredi,* two pharmacists who challenged the revocation of their licenses to practice claimed that the State Board of Pharmacy had invalidly delegated its rule-making authority and had violated procedural notice and publication requirements by the wholesale incorporation of federal regulations into Pharmacy Regulation 27.18(u).

Under section 703(a), we refused to consider that challenge to the regulations on appeal because (1) there was no factual finding that the board improperly adopted the pharmacy regulations at issue, (2) the pharmacists failed to address the issue of whether the legislature or agency had abrogated their duties to set meaningful violation standards, and (3) the pharmacists had not challenged an almost identical statutory provision under the Pharmacy Act.

Consequently, we do not believe that section 703 bars Mr. Friedman from questioning the validity of the regulations, as well as the Act, even though he never challenged their constitutionality at his license revocation hearing.

### Double Jeopardy

The fifth amendment guarantee against double jeopardy,[8] enforceable against the states through the fourteenth amendment under *Benton v. Maryland,* 395 U.S. 784 (1969), consists of three separate constitutional protections: It protects against (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. *North Carolina v. Pearce,* 395 U.S. 711, 717 (1969). *See also Commonwealth v. Mills,* 447 Pa. 163, 169, 286 A.2d 638, 641 (1971).

Although the United States Supreme Court has held that Congress may impose both a criminal and a civil sanction with respect to the same act or omission and that the clause applies only to criminal punishment, *Helvering v. Mitchell,* 303 U.S. 391, 399 (1937), and to proceedings that are essentially criminal, *Breed v. Jones,* 421 U.S. 519, 528 (1975), it has also held that an ostensibly civil penalty can amount to a criminal sanction if the legislature intended the penalty to be punitive rather than remedial, *Mitchell* at 398-99, or if the fine is so "unreasonable or excessive that it transforms what was clearly intended as a civil remedy into a criminal penalty." *One Lot Emerald Cut Stones v. United States,* 409 U.S. 232, 237 (1972). *See also City of Philadelphia v. Kenny,* 28 Pa. Commonwealth Ct. 531, 539, 369 A.2d 1343, 1348, *cert. denied,* 434 U.S. 923 (1977).

---

[8] The federal double jeopardy provides:

[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb. . . .

Our own Supreme Court has noted that the Pennsylvania double jeopardy clause, Pa. Const. art. I, §10,[9] differs "only stylistically" from its federal counterpart, *Commonwealth v. Campana*, 452 Pa. 233, 243, 304 A.2d 432, 436 (1973), and that the framers of our constitution did not intend to provide Pennsylvania citizens with protection greater than that afforded by the federal guarantee. *Commonwealth v. Hogan*, 482 Pa. 333, 342-43, 393 A.2d 1133, 1137-38 (1978).

Thus, given these constitutional parameters, we must decide if the commissioner's imposition of a fine[10] here amounts to a criminal penalty against which Mr. Friedman may invoke protection of the double jeopardy clause.

Whether the Act and its implementing regulations impose civil or criminal sanctions is primarily a question of statutory construction. *Helvering*, 303 U.S. at 399 (as matter of statutory construction, IRS did not violate taxpayer's guarantee against double jeopardy by imposing fifty percent additional assessment for fraud on taxpayer acquitted in criminal tax evasion trial).

Here, the commissioner fined Mr. Friedman under section 639 of the Act, 40 P.S. §279(2), which empowers the commissioner to "[i]mpose a *civil* penalty of not more than one thousand dollars for each and every ... violation ... ," upon satisfactory evidence of conduct which would disqualify an agent from initial issuance of a license. [Emphasis added.]

---

[9] The Pennsylvania double jeopardy clause provides:

No person shall, for the same offense, be twice put in jeopardy of life or limb. . . .

[10] Mr. Friedman does not challenge the revocation of his license on double jeopardy grounds, only the imposition of the $1,000 fine. *See Helvering v. Mitchell*, 303 U.S. 391, 399 (because revocation of privilege voluntarily granted is remedial sanction characteristically free of punitive criminal element, such sanction cannot be grounds for doube jeopardy challenge).

Because the plain language of 40 P.S. §279(2) clearly and unambiguously authorizes civil rather than criminal sanctions against offending agents, we are bound to the letter of that provision under the Statutory Construction Act of 1972, 1 Pa. C. S. §1921(b).[11] Thus, as a matter of statutory construction, we hold that the commissioner's fine was civil and not criminal.[12]

Mr. Friedman would have us eschew the civil label attached to section 279's penalty and rule that his fine was punitive rather than remedial, designed solely to exact punishment for an offense against the "public justice."

We do not agree. As the department has argued persuasively in its brief, the Commonwealth's interest here is not to protect the public against acts of criminal conspiracy and transportation of stolen goods, interests served by the criminal prosecution of Mr. Friedman in federal district court. Rather, the statutorily-based imposition of a fine upon offending agents is a necessary part of the Commonwealth's reg-

[11] 1 Pa. C. S. §1921(b) provides:

When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

[12] In deciding that Congress intended a civil rather than criminal penalty in *Helvering*, the Supreme Court also found persuasive. (1) the establishment of a civil procedure for the collection of the penalty and (2) a statutory design which imposed "separate and distinct" civil and criminal penalties, depending upon the offense. 303 U.S. at 402-04.

Here, too, the General Assembly has made clear its intention to treat the sanction imposed in this case as civil by (1) establishing an administrative procedure for revocations and fines and by (2) imposing criminal sentences for other violations of the Act. *See* section 639 of the Act, 40 P.S. §279, concerning notice and hearing requirements, and section 639 of the Act concerning misdeameanor convictions for the violation of sections 633.1 and 636-638, 40 P.S. §§273.1, 276-278.

ulatory scheme; it protects the public from unworthy agents, helps maintain the appearance of industry integrity, and makes the agent's license valuable to hold. *See Romano v. Sheppard,* 45 Pa. Commonwealth Ct. 19, 404 A.2d 758 (1979).

Finally, we do not find the imposition of a $1,000 fine "so unreasonable or excessive," *One Lot Emerald Cut Stones* at 237, that it transforms the Acts civil remedy into a criminal penalty. *See Romano* at 21, 404 A.2d at 759 (revocation of license and imposition of $1,000 penalty for felony conviction not disproportionate to conduct in light of commissioner's obligation to protect public from unscrupulous agents).

Accordingly, we reject Mr. Friedman's double jeopardy claim.[13]

## *Trial by Jury*

Our Supreme Court has construed article 1, section 6 of the Pennsylvania Constitution[14] to mandate a jury trial "in every situation in which [an individual] would have been entitled to such a trial at the time of the adoption of our State Constitution of 1790. . . ." *William Goldman Theaters, Inc. v. Dana,* 405 Pa. 83, 93, 173 A.2d 59, 64, *cert. denied,* 368 U.S. 897 (1961). Accordingly, jury trials are not available in proceedings created by statute unless the statute so provides, or unless the proceeding has a basis in common law. *See Appeal of Watson,* 377 Pa. 495, 105 A.2d 576, *cert. denied,* 348 U.S. 879 (1954), *reh'g. denied,* 348 U.S. 922 (1955) (no jury trial available for teacher whose statutory employment contract terminated because of mental derangement).

---

[13] Because we hold that the commissioner's fine is civil, we need not reach Mr. Friedman's dual sovereignty argument.

[14] Article 1, section 6 provides in pertinent part:
Trial by jury shall be as heretofore, and the right thereof remain inviolate.

Mr. Friedman does not claim that the revocation of an insurance agent's license existed as a common law action in 1790 or that he is entitled to a trial by jury because the Act so provides; rather, he contends that the commissioner's revocation proceeding is analogous to a common law action sounding in fraud. Without deciding if Pennsylvania law guarantees a right to jury trial for common law actions sounding in fraud, we reject Mr. Friedman's attempt to recast the commissioner's enforcement proceeding in that manner.

Certainly there were elements of fraud in Mr. Friedman's insurance check conversion scheme. The commissioner, however, revoked Mr. Friedman's license and imposed a penalty not as punishment for fraudulent conduct, but to protect the insurance-buying public from unscrupulous agents. *Romano* at 21, 404 A.2d at 759.

Thus, because the proceeding here has no basis in common law, we hold that Mr. Friedman was not entitled to a trial by jury.

### *Due Process*

Painting his hearing as a "sham" and a "pro forma gesture," Mr. Friedman also contends that section 639 of the Act fails to provide insurance agents in his situation with a meaningful opportunity to be heard because the commissioner has no alternative but to revoke a license for prior criminal convictions. We disagree.

Section 639 specifically provides that the commissioner "may in his discretion" revoke an offending agent's license or impose a civil penalty for violations of the Act. Although we have held that the criminal conviction of an insurance agent establishes a prima facie case of unworthiness for licensure, *Fumo* at 398, 427 A.2d at 1263, we have also held that section 639

expressly provides for the consideration of mitigating circumstances. *Romano* at 21, 404 A.2d at 759.

Here, as noted in the commissioner's opinion, the presiding officer made every effort to determine why Mr. Friedman and his counsel were absent from the revocation proceeding and if they intended to present evidence rebutting the department's prima facie case of unworthiness. Considering the department's scrupulous attention to his due process rights, Mr. Friedman, having presumed the futility of the administrative hearing, cannot claim that the commissioner denied him a meaningful opportunity to be heard. *Cf. Canonsburg General Hospital v. Department of Health,* 492 Pa. 68, 74, 422 A.2d 141, 145 (1980) (courts should not presume futility in administrative appeal).

Accordingly, we affirm.

### ORDER

Now, February 23, 1983, the order of the Insurance Commissioner, Docket No. P80-6-11, is hereby affirmed.